**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| REMBRANDT WIRELESS TECHNOLOGIES, LP, | § § § | |
| Plaintiff, | § § | |
| v. | § § | Case No. 2:13-CV-213 |
| SAMSUNG ELECTRONICS CO. LTD.; SAMSUNG ELECTRONICS AMERICA, INC.; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC; SAMSUNG AUSTIN SEMICONDUCTOR, LLC; BLACKBERRY, CORP. and BLACKBERRY, LTD, | § § § § § § § | Jury Trial Requested |
| Defendants. | § § | |

**REMBRANDT'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OF NO DAMAGES PRIOR TO THE FILING DATE OF THE COMPLAINT FOR FAILURE TO MARK**

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................... 1

II.   STATEMENT OF UNDISPUTED FACTS .......................................................... 2

III.  LEGAL STANDARD............................................................................................ 2

    A.    Summary Judgment Standard In General ............................................... 2

    B.    Burdens on Summary Judgment for Section 287(a) Marking Requirement........... 4

IV.   ARGUMENT ......................................................................................................... 5

    A.    Claim 40 Cannot Create Any Marking Obligation Because It Was Disclaimed, Which Means That It Should be Treated As If It Never Existed..................................................................................................... 5

        1.    *Claim 40 was properly disclaimed.* .......................................... 5

        2.    *Claim 40 must be treated as though it had never existed.* ......... 6

        3.    *An article covered by disclaimed Claim 40 cannot be considered a "patented article" under the marking statute.*.......................... 7

        4.    *Treating Claim 40 as though it never existed is consistent with the underlying purpose of the marking statute.* ............................... 7

    B.    Samsung Cannot Establish As a Matter of Law That Any of the Other Claims of the '580 Patent Create a Marking Obligation........................ 8

        1.    *Defendants failed to meet their initial burden with respect to any of the other claims.* ................................................................... 8

        2.    *Even if Samsung had met its initial burden, 18 other claims of the '580 Patent have been disclaimed, which means they should be treated as if they never existed and cannot create a marking obligation.* ................................................................................. 9

        3.    *Because there is at least a genuine issue of material fact as to whether the 802.11g standard practices any of the other claims of the '580 Patent, Samsung cannot establish as a matter of law that there was a marking obligation.* .......................................... 10

           i.    different "types" of modulation methods.................................. 10

           ii.   master/slave relationship......................................................... 11

           iii.  multipoint communications ..................................................... 11

           iv.  reversion.................................................................................. 12

C.    Even If Claim 40 Had Not Been Disclaimed, Claim 40 Did Not Create a Relevant Marking Requirement Because the 802.11g Products Allegedly Covered by Claim 40 Practice an Invention That is Separate and Distinct From the Other Claims of the '580 Patent. ........................................................... 13

V.    CONCLUSION ............................................................................................................. 14

# TABLE OF AUTHORITIES

**Cases**

*ADC Telecomms., Inc. v. Siecor Corp.*,
  954 F. Supp. 820 (D. Del. Feb. 7 1997) ............................................................ 13

*Altoona Publix Theatres, Inc. v. Am. Tri-Ergon Corp.*,
  294 U.S. 477 (1935) ............................................................................................ 7

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) ........................................................................................ 2, 3

*Boehringer Ingelheim Int'l GmbH v. Barr Labs., Inc.*,
  592 F.3d 1340 (Fed. Cir. 2010) .......................................................................... 6

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) ............................................................................................ 2

*Genetics Inst., LLC v. Novartis Vaccines and Diagnostics, Inc.*,
  655 F.3d 1291 (Fed. Cir. 2011) .......................................................................... 6

*Guinn v. Kopf*,
  96 F.3d 1419 (Fed. Cir. 1996) ..................................................................... 6, 7, 9

*Kaempe v. Myers*,
  367 F.3d 958 (D.C. Cir. 2004) ............................................................................ 3

*KeyStone Retaining Wall Sys., Inc. v. Westrock, Inc.*,
  997 F.2d 1444 (Fed. Cir. 1993) .......................................................................... 3

*Leishman v. Assoc. Wholesale Elec. Co.*,
  137 F.2d 722 (9th Cir. 1943) .............................................................................. 6

*Lencco Racing Co., Inc. v. Jolliffe*,
  1999 WL 506857 ................................................................................................ 3

*Mass. Inst. of Tech. v. Abacus Software, Inc.*,
  No. 5:01-CV-344, 2004 WL 5268123 (E.D. Tex. Aug. 4, 2004) ................. 3, 4, 5, 14

*Maxwell v. J. Baker, Inc.*,
  86 F.3d 1098 (Fed. Cir. 1996) ............................................................................ 4

*Merck & Co., Inc. v. Apotex, Inc.*,
  No. 06-5789 (MLC), 2007 WL 4082616 (D. N.J. 2007) .................................... 6

*Nike, Inc. v. Wal-Mart Stores, Inc.*,
  138 F.3d 1437 (Fed. Cir. 1998).......................................................................... 7

*Sealant Sys. Int'l, Inc. v. TEK Global S.R.L.*,
  No. 5:11-CV-00774-PSG, 2014 WL 1008183 (N.D. Cal. Mar. 7, 2014) .......... 4

*Soundscriber Corp. v. U.S.*,
    360 F.2d 954 (Ct. Cl. 1966) .................................................................................................... 6

*Texas Digital Sys., Inc. v. Telegenix, Inc.*,
    308 F.3d 1193 (Fed. Cir. 2002) ............................................................................................... 4

*Toro Co. v. McCullouch Corp.*,
    898 F. Supp. 679 (D. Minn. 1995) ..................................................................................... 13, 14

*Tyco Healthcare Group, LP v. C.R. Bard, Inc.*,
    818 F. Supp. 2d 777 (D. Del. 2011) ......................................................................................... 6

*United Carbon Co. v. Carbon Black Research Found.*,
    59 F. Supp. 384 (1945) ............................................................................................................ 7

*Vectra Fitness, Inc. v. TNWK Corp.*,
    162 F.3d 1379 (Fed. Cir. 1998) ............................................................................................ 6, 9

*Vivid Techs, Inc. v. Am. Sci. & Eng'g., Inc.*,
    200 F.3d 795 (Fed. Cir. 1999) ........................................................................................ passim

*Zenith Elecs. Corp. v. PDI Comm. Sys., Inc.*,
    522 F.3d 1348 (Fed. Cir. 2008) ............................................................................................... 2

## Rules

35 U.S.C. § 287 ....................................................................................................................... 7

35 U.S.C. § 287(a) ............................................................................................................ 4, 5, 13

37 C.F.R. § 1.321(a) .................................................................................................................. 5

Plaintiff Rembrandt Wireless Technologies, LP ("Rembrandt") files this Response in Opposition to the Motion for Summary Judgment of No Damages Prior to the Filing Date of the Complaint for Failure to Mark filed by Defendants Samsung Electronics Co. Ltd., Samsung Electronics America, LLC, Samsung Telecommunications America, LLC, and Samsung Austin Semiconductor, LLC (together "Samsung").

## I.    INTRODUCTION

Samsung is not entitled to summary judgment barring Rembrandt from recovering pre-suit damages because Samsung cannot establish as a matter of law that Rembrandt had a marking obligation that was not met.  Samsung cannot prevail given that its motion presents only limited evidence that WiFi products sold by a Rembrandt licensee—products that are very different from the accused Bluetooth products in this case—were covered by a single statutorily disclaimed claim in U.S. Patent No. 8,023,580 (the "'580 Patent").

Rembrandt does not dispute that its licensee ZhoneTechnologies, Inc. ("Zhone") sold unmarked products that implement the IEEE 802.11g "Wi-Fi" standard.  But Samsung's motion at best presents limited evidence that this 802.11g standard practices a single claim of the '580 Patent—Claim 40—and, therefore, Samsung is not entitled to judgment as a matter of law. Moreover, Claim 40 has been properly disclaimed, which means that it must be treated as though it never existed.  As a result, the products Samsung alleges were covered by Claim 40 cannot give rise to a marking obligation.  None of the other claims give rise to a marking obligation either because they do not practice the 802.11g standard or were disclaimed.

Further, even if Rembrandt did not disclaim Claim 40, the marking obligation still does not apply, because Claim 40 relates to a separate and distinct invention from the invention embodied in the patented articles accused in this case.

Samsung's motion must be denied because, at a minimum, there is a genuine issue of material fact as to whether any unmarked products practicing the claimed invention were sold before the complaint was filed in this case.

## II.   STATEMENT OF UNDISPUTED FACTS

1.       On December 4, 2014, Rembrandt filed a Disclaimer pursuant to 37 C.F.R. § 1.321(a) with the USPTO with respect to claims 32, 34, 40, 43, and 44 of the '580 patent. Alavi Decl. Exh. 1, Disclaimer in Patent Under 37 C.F.R. 1.321(a), USPTO Dkt. No. REMB_0109_USCON, Dec. 4 2014, RIP00086551-559 at RIP00086554 (the "December 4, 2014 Disclaimer").

2.       On December 15, 2014, Rembrandt filed a Disclaimer pursuant to 37 C.F.R. § 1.321(a) with the USPTO with respect to claims 24, 26, 27, 28, 31, 33, 35, 36, 37, 39, 42, 45, 46, and 48 of the '580 patent. Alavi Decl. Exh. 2, Disclaimer in Patent Under 37 C.F.R. 1.321(a), USPTO Dkt. No. REMB_0109_USCON, Dec. 15 2014, RIP00086560-566 at RIP00086562 (the "December 15, 2014 Disclaimer").

## III.   LEGAL STANDARD

### A.     Summary Judgment Standard In General

Summary judgment should be granted only if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "Initially, the movant bears the burden of bringing forward sufficient evidence to establish that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Zenith Elecs. Corp. v. PDI Comm. Sys., Inc.*, 522 F.3d 1348, 1363 (Fed. Cir. 2008).

"When the moving party does not have the burden of proof on an issue that is subject of the summary judgment motion . . . the movant nonetheless bears the initial burden of coming forward with sufficient evidence to demonstrate that there is no material issue of fact that would preclude summary judgment, and that it is entitled to judgment as a matter of law." *Vivid Techs, Inc. v. Am. Sci. & Eng'g., Inc.*, 200 F.3d 795, 806 (Fed. Cir. 1999).

"If the movant meets its initial burden, the burden of coming forward shifts to the party opposing the motion." *Id.* at 806. "The opposing party does not, at this stage, have the burden of establishing that it is entitled to judgment in its favor; it need only show either that the movant did not establish that it is entitled to judgment on undisputed facts or on the opposer's version of the facts, or that there are material issues of fact which require resolution at trial." *Id.* at 806-807. "To survive a motion for summary judgment, the party bearing the burden of proof at trial . . . must provide evidence showing there is a triable issue of fact as to each element essential to that party's claim." *Mass. Inst. of Tech. v. Abacus Software, Inc.*, 2004 WL 5268123, No. 5:01-CV-344, *6 (E.D. Tex. Aug. 4, 2004) (quoting *Kaempe v. Myers*, 367 F.3d 958, 966 (D.C. Cir. 2004)); *Lencco Racing Co., Inc. v. Jolliffe*, 215 F.3d 1341, 1999 WL 506857, *4 (Fed. Cir. 1999).

"[T]he evidence submitted by the nonmovant, in opposition to a motion for summary judgment, 'is to be believed, and all justifiable inferences are to be drawn in [its] favor.'" *KeyStone Retaining Wall Sys., Inc. v. Westrock, Inc.*, 997 F.2d 1444, 1449-50 (Fed. Cir. 1993) (quoting *Anderson*, 477 U.S. at 255). The Court's responsibility is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson* at 249. "At the end of the day, the Court then must evaluate the parties' submissions, giving the nonmoving party the benefit of applicable inferences, and decide whether the

standards for summary judgment have been- or have not been- met." *Mass. Inst. of Tech..*, 2004 WL 5268123 at *7.

### B.      Burdens on Summary Judgment for Section 287(a) Marking Requirement

As Samsung explained, the marking statute permits a patentee that sells a "patented article" to "give notice to the public" that products are patented by marking them with the patent numbers.  35 U.S.C. § 287(a).  "In the event of failure so to mark, no damages shall be recovered by the patentee in any action for infringement, except on proof that the infringer was notified of the infringement and continued to infringe thereafter, in which event damages may be recovered only for infringement occurring after such notice." *Id.* "Filing of an action for infringement shall constitute such notice."  *Id.*

"The recovery of damages is not limited [by Section 287, however] where there is no failure to mark, i.e., where the proper patent notice appears on products or *where there are no products to mark*."  *Texas Digital Sys., Inc. v. Telegenix, Inc.*, 308 F.3d 1193, 1220 (Fed. Cir. 2002) (emphasis added); *see Sealant Sys. Int'l, Inc. v. TEK Global S.R.L.*, No. 5:11-CV-00774-PSG, 2014 WL 1008183, *3 (N.D. Cal. Mar. 7, 2014) (summary judgment limiting damages not appropriate where a reasonable jury could find products identified did not practice the patent).  "*If* no unmarked 'patented articles' are made, offered for sale, or sold by the patentee or others authorized by the patentee, the consequence under § 287(a) of losing the right to recover damages for infringement prior to actual notice is not triggered, regardless of the action-or inaction-of the patentee."  *Mass. Inst. of Tech.*, 2004 WL 5268123 at *39.

"[T]he patentee has the burden of pleading and proving *at trial* that the patentee has complied with the statutory requirements of § 287."  *Id.* at *4 (emphasis added); *see Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1111 (Fed. Cir. 1996).  By contrast, "[o]n *summary judgment*, the patentee thus must show that there is some genuine issue of material fact that precludes summary

judgment that the patentee did not comply with § 287." *Mass. Inst. of Tech.*, 2004 WL 5268123 at *7 (emphasis added).  "Among the potential material facts under § 287(a) are (1) whether the patentee, or any licensees or other authorized persons, made, offered for sale, or sold (2) any patented articles (3) without proper marking." *Id.* at *38.

## IV.    ARGUMENT

### A.    Claim 40 Cannot Create Any Marking Obligation Because It Was Disclaimed, Which Means That It Should be Treated As If It Never Existed.

Rembrandt properly disclaimed Claim 40 in accordance with 35 U.S.C. § 253(a).  As a result, Claim 40 must be treated as though it never existed.  Because Claim 40 must be treated as though it never existed, an article covered by Claim 40 is not considered a "patented article" under the marking statute.  As a result, no marking obligation could arise even if Samsung could establish that articles sold were covered by disclaimed Claim 40.  This approach is consistent with the underlying purposes of the statutes at issue here.

#### 1.    *Claim 40 was properly disclaimed.*

Section 253(a) provides that "[a] patentee, whether of the whole or any sectional interest therein, may, on payment of the fee required by law, make disclaimer of any complete claim, stating therein the extent of his interest in such patent.  Such disclaimer shall be in writing, and recorded in the Patent and Trademark Office; and it shall thereafter be considered as part of the original patent to the extent of the interest possessed by the disclaimant and by those claiming under him."  35 U.S.C. § 253(a).  On December 4, 2014, Rembrandt filed a Disclaimer pursuant to 37 C.F.R. § 1.321(a) with the USPTO with respect to various claims of the '580 patent, including claim 40. Alavi Decl. Exh. 1, December 4, 2014 Disclaimer at RIP00086554 (disclaiming claims 32, 34, 40, 43 and 44 of the '580 patent).  Because Rembrandt's disclaimer of Claim 40 "was received by the PTO in proper form and with the appropriate filing fee" on

December 4, 2014, "the disclaimer was recorded on that date regardless of its handling by the PTO." *Vectra Fitness, Inc. v. TNWK Corp.*, 162 F.3d 1379, 1382 (Fed. Cir. 1998).

The timing of Rembrandt's disclaimer is proper. The Federal Circuit specifically has held that "a patentee may file a disclaimer after issuance of the challenged patent or *during litigation*, or even after a finding that the challenged patent is invalid . . . ." *Boehringer Ingelheim Int'l GmbH v. Barr Labs., Inc.*, 592 F.3d 1340, 1347 (Fed. Cir. 2010) (emphasis added).

### 2.    *Claim 40 must be treated as though it had never existed.*

The Federal Circuit repeatedly has established that "[d]isclaiming particular claims under § 253 'effectively eliminate[s] those claims from the original patent,'" which means that "upon entry of a disclaimer under § 253, we treat the patent as though the disclaimed claim(s) had 'never existed.'" *Genetics Inst., LLC v. Novartis Vaccines and Diagnostics, Inc.*, 655 F.3d 1291, 1299 (Fed. Cir. 2011) (quoting *Vectra Fitness, Inc.*, 162 F.3d at 1383); *see Guinn v. Kopf*, 96 F.3d 1419, 1422 (Fed. Cir. 1996) ("A statutory disclaimer under 35 U.S.C. § 253 has the effect of retroactively cancelling claims from the patent and the patent is viewed as though the disclaimed claims never existed in a patent."). Courts have explained that disclaimer retroactively rendered claims non-existent in a variety of contexts.[1]

---

[1] *See, e.g., Vectra Fitness, Inc.*, 162 F.3d at 1384 (certificate of correction was superfluous because disclaimer related back to original date of patent); *Leishman v. Assoc. Wholesale Elec. Co.*, 137 F.2d 722 (9th Cir. 1943) (original patent and reissue must be construed as if claim that was disclaimed while case was pending at the District Court "had never been included in either") (citations omitted); *Tyco Healthcare Group, LP v. C.R. Bard, Inc.*, 818 F. Supp. 2d 777 (D. Del. 2011) (defendant was not entitled to summary judgment on double-patenting issue because disclaimer achieved "the underlying purpose of the bar against obviousness-type double patenting (namely, to prevent extension of the statutory monopoly beyond its specified term)"); *Merck & Co., Inc. v. Apotex, Inc.*, No. 06-5789 (MLC), 2007 WL 4082616 (D. N.J. 2007) (statutory disclaimer of all claims of patents at issue caused there to be no actual case or controversy because the claims were to be treated as never having existed); *Soundscriber Corp. v. U.S.*, 360 F.2d 954, 961 (Ct. Cl. 1966) ("The construction of a patent, after a disclaimer has been properly entered, must be the same that it would have been if the matter so disclaimed had never been claimed.").

Treating disclaimed claims as though they never existed for purposes of the marking statute is consistent with longstanding precedent recognizing that the advantages of amending claims by disclaimer "are so great that patentees generally prefer to amend bad claims by disclaimer rather than by reissue, in order to preserve causes of action for past infringement." *United Carbon Co. v. Carbon Black Research Found.*, 59 F. Supp. 384, 387 (1945).  To rule that an article covered by a disclaimed claim could give rise to a marking obligation, would subvert the existing statutory framework that treats a disclaimer as a "retroactive amendment of the patent, effective as of the date of grant of the original patent" such that past damages need not be sacrificed.  *Id.*

### 3.     An article covered by disclaimed Claim 40 cannot be considered a "patented article" under the marking statute.

Disclaimer causes Claim 40 to be "withdrawn from the protection of the patent laws." *Altoona Publix Theatres, Inc. v. Am. Tri-Ergon Corp.*, 294 U.S. 477, 492 (1935) (cited in *Guinn*, 96 F.3d at 1422).  This amounts to "relinquish[ing] any right to exclude others from the subject matter" of the claim.  *Guinn*, 96 F.3d at 1422.  As a result, an article covered by Claim 40 cannot be considered a "patented article" under the marking statute, 35 U.S.C. § 287, which means that such an article cannot give rise to a marking obligation.

### 4.     Treating Claim 40 as though it never existed is consistent with the underlying purpose of the marking statute.

The "three related purposes" of the marking statute are: (1) "helping to avoid innocent infringement"; (2) "encouraging patentees to give notice to the public that the article is patented"; and (3) "aiding the public to identify whether an article is patented."  *Nike, Inc. v. Wal-Mart Stores, Inc.*, 138 F.3d 1437, 1443 (Fed. Cir. 1998).  But it is too simplistic to characterize the purpose of the marking requirement in section 287 as just requiring notice to an infringer, however, because the marking requirement is not violated by a patent owner who never

7

makes the patented product (or licenses others to do so).  Thus, the purpose of 287 is tied to "estoppel or reliance: a patent owner who sells a patented product but does not mark it _may be understood to have led the public to believe that it is not patented_, and thus cannot be heard to complain for damages if a member of the public who has not been given actual notice of the patent _chooses to copy the product_."  C. Oppedahl, "Patent Marking of Systems," 11 COMPUTER & HIGH TECH. L.J. 205 (2005).

As a general matter, if a disclaimed claim is treated as though it never existed, then there could be no infringement of that claim because the patentee must forfeit any ability to assert infringement of the claim, and therefore there would be no reason to encourage the provision of notice or aid in identifying whether an article is patented.

Here, Samsung argues that the Zhone products that practice the 802.11g standard should have been marked because they are covered by Claim 40.  Even if these products had been marked, Samsung only would have been on notice that it could not sell products that practice the 802.11g standard without infringing the patent.  But Rembrandt has not accused any Samsung products in this case that practice the 802.11g standard; it only accused Samsung's Bluetooth products.  Under the present facts, Samsung could not have relied on the lack of patent marking on Zhone's 802.11g products in choosing to sell Bluetooth products.  So the purpose of the marking statute would not be served by granting Samsung's motion.

**B.      Samsung Cannot Establish As a Matter of Law That Any of the Other Claims of the '580 Patent Create a Marking Obligation.**

**_1.       Defendants failed to meet their initial burden with respect to any of the other claims._**

While Defendants are not obligated to show how the 802.11g standard practices each and every possible claim of Rembrandt's asserted patents, Samsung's evidence regarding the disclaimed Claim 40 cannot be the basis of a well-pleaded summary judgment motion with

respect to any of the other claims.  For these other '580 claims, this evidence cannot by itself cannot establish there is no genuine issue of material fact or that Rembrandt cannot establish an essential element.  *See Vivid Techs, Inc.*, 200 F.3d at 806 (to meet its initial burden, the moving party must either negate an essential element of the opposing party's case, or show no material issue of fact and that the oppose will not be able to prove an essential element of its case); *Guinn*, 96 F.3d at 1422; *Vectra Fitness*, 162 F.3d at 1383-1384.  Nor is Samsung's bare allegation that Claim 40 is "exemplary" (Dkt. 167 at 7-8) sufficient to meet the initial burden.  *Id.*  Because Samsung failed even to name any claims other than Claim 40 – let alone, specify how any of those claims practice the 802.11g standard on an element-by-element basis – Defendants are not entitled to a judgment as a matter of law.

> ### 2. Even if Samsung had met its initial burden, 18 other claims of the '580 Patent have been disclaimed, which means they should be treated as if they never existed and cannot create a marking obligation.

Claims 24, 26, 27, 28, 31, 32, 33, 34, 35, 36, 37, 39, 42, 43, 44, 45, 46, and 48 have also been disclaimed. Alavi Decl. Exh. 1, December 4, 2014 Disclaimer at RIP00086554 (disclaiming claims 32, 34, 40, 43 and 44 of the '580 patent); Alavi Decl. Exh. 2, December 15, 2014 Disclaimer at RIP00086562 (disclaiming claims 24, 26, 27, 28, 31, 33, 35, 36, 37, 39, 42, 45, 46, and 48 of the '580 patent). For the reasons addressed *supra* in Section IV.A with respect to claim 40, even if Defendants specifically pleaded how the 802.11g standard practices these claims, these claims cannot trigger a marking obligation and, therefore, cannot support a judgment as a matter of law for failure to mark. *Guinn*, 96 F.3d at 1422; *Vectra Fitness*, 162 F.3d at 1383-1384.

**3.      Because there is at least a genuine issue of material fact as to whether the 802.11g standard practices any of the other claims of the '580 Patent, Samsung cannot establish as a matter of law that there was a marking obligation.**

There is substantial evidence that the 802.11g standard does not teach or disclose many of the limitations required by the claims of the '580 patent, other than claim 40.   Samsung merely asserts that claim 40 is "exemplary" (Dkt. 167 at 7-8), without support and without even acknowledging or attempting to account for any of the numerous distinctions between the elements required by claim 40 and the elements required by the other claims of the '580 patent. As demonstrated by the evidence below, at least a genuine issue of fact exists as to whether the 802.11 g practices any of these other claims.

### i.       different "types" of modulation methods

Claims 1-22 and 58-79 all require "at least two types of modulation methods . . . wherein the second modulation method is of a different type than the first modulation method".  Haddad Decl. Ex. 5, '580 Patent; *see* Akl Decl. Ex. 1, Akl Rprt. at ¶¶ 224, 264 (discussing asserted claims).  By contrast, claim 40 does not require different *types* of modulation methods, but rather merely "a first modulation method and a second modulation method that is different from the first modulation method". Haddad Decl. Ex. 5, '580 Patent.  The Court has construed "different types of modulation methods" to mean "different families of modulation techniques, such as the FSK family of modulation methods and the QAM family of modulation methods." Dkt. 114 at 29; Akl Decl. Ex. 1, Akl Rprt. at ¶¶ 224-25, 227, 264-65.   Defendants argue that QAM and BPSK are different modulation methods.  Dkt. 167 at 7.  However, as Dr. Akl explains, QAM is not a different *type* (or family) of modulation methods than BPSK or QPSK, because QAM, BSPK, and QPSK all vary the phase characteristic of the carrier in accordance with information to be communicated.  Akl Decl. Ex. 1, Akl Rprt. at ¶¶ 218, 224-25, 227, 264-65.  Moreover,

Defendants' expert, Dr. Goodman, appears to concede that the 802.11g standard, including any preceding standards, does not disclose "different types of modulation methods."  Akl Decl. Ex. 1, Akl Rprt. at ¶ 225 (explaining that Dr. Goodman implicitly appears to concede the WiFi standard does not disclose "different types of modulation methods" by arguing that it would have been obvious to combine the WiFi standard with another reference to arrive at the claimed different "types" of modulation methods) (citing Report of David. J. Goodman Concerning Invalidity at ¶ 358).  There is more than enough evidence to establish a genuine issue of fact as to whether the 802.11g standard practices every element of claims 1-22 and 58-79 of the '580 Patent because there is evidence that the 802.11g standard does not disclose different "types" of modulation methods. *See Vivid Techs, Inc.*, 200 F.3d at 806-807.

## ii.     master/slave relationship

Claims 1-22 and 58-79 all require "a master/slave relationship in which a slave communication from a slave to a master occurs in response to a master communication from the master to the slave". Haddad Decl. Exh. 5, '580 Patent; *see* Akl Decl. Ex. 1, Akl Rprt. at ¶¶ 219, 262 (discussing asserted claims).  Claims 49-57 require a related "master transceiver" limitation. *Id.*  By contrast, Claim 40 does not require any form of a master/slave limitation.  Haddad Decl. Exh. 5, '580 Patent.  Moreover, Rembrandt's validity expert, Dr. Akl, has testified that the 802.11 g standard, including any preceding standards, does not teach any form of a master/slave relationship.  Akl Decl. Ex. 1, Akl Rprt. at ¶¶ 218-222, 263.  Thus, a genuine issue of fact exists as to whether the 802.11g standard practices every element of claims 1-22 and 49-79 of the '580 Patent on the grounds that it does not practice any of the master/slave limitations in these claims. *See Vivid Techs, Inc.*, 200 F.3d at 806-807.

## iii.     multipoint communications

Claims 11, 29, 38, 47 and 57 all require "multipoint communications relationship" or "multipoint communications protocol" limitation.  Haddad Decl. Exh. 5, '580 Patent.  The '580 Patent defines multipoint communications to require a master/slave relationship.  Haddad Decl. Exh. 5, '580 Patent at 1:56-58.   Dr. Akl testifies that these claims disclose multipoint communications which also require a master/slave relationship.  Akl Decl. Ex. 1, Akl Rprt. at ¶¶ 61-64, 219-22, 262-63.   Claim 40 does not recite either multipoint communications or a master/slave relationship.  Haddad Decl. Exh. 5, '580 Patent.  Moreover, the 802.11g standard, including any preceding standards, does not teach multipoint communications or master/slave relationship.  Akl Decl. Ex. 1, Akl Rprt. at ¶¶ 218-222, 262-63.   Thus, a genuine issue of material fact exists as to whether the 802.11g standard practices claims 11, 29, 38, 47 and 57 of the '580 Patent. *See Vivid Techs, Inc.*, 200 F.3d at 806-807.

### iv.    <u>reversion</u>

Claims 2, 23-31, 41, 49-53, and 59 all require, after sending a transmission with data communicated using the second modulation method, a subsequent transmission that indicates a "reversion" for the following data communication back to the first modulation method. Haddad Decl. Exh. 5, '580 Patent; *see* Akl Decl. Ex. 1, Akl Rprt. at ¶¶ 234, 266 (discussing asserted claims).  By contrast, claim 40 does not require a reversion. *Id.*  Moreover, as Dr. Akl explained, the 802.11g standard, including any preceding standards, does not teach reversion.  Akl Decl. Ex. 1, Akl Rprt. at ¶¶ 218, 235-238, 267.  In its petitions for inter partes review of the '580 patent to the Patent Trial and Appeal Board of the United States Patent Office (the "PTAB"), Samsung has relied on the Boer reference which, according to Samsung, "describes communications technology that is integrated into communications systems that are *compliant with the 802.11 Standard* and that extends the Standard to allow for faster data transmissions." Alavi Decl. Ex. 3, Petition by Samsung for Inter Partes Review of '580 patent, March 20, 2014, RIP00086462-531

at RIP00086520-521 (emphasis added).  In response, the PTAB found that Boer teachings *failed* to meet the "reversion" limitations of the claims, and declined to institute any inter partes review with respect to those claims.  Alavi Decl. Ex. 4, Institution Decision on Petition by Samsung for Inter Partes Review of '580 patent, September 23, 2014, RIP00086532-550 at RIP00086544-546.  At the very minimum, a genuine issue of fact exists as to whether the 802.11g standard practices claims 2, 23-31, 41, 49-53, and 59 of the '580 Patent on the grounds that it does not require reversion.  *See Vivid Techs, Inc.*, 200 F.3d at 806-807.

In sum, Rembrandt has presented ample evidence to show that every non-disclaimed claim of the '580 Patent, other than Claim 40, requires at least one additional limitation that the 802.11g standard does not implement.  Because at least a genuine issue of material fact exists with respect to this issue, summary judgment should not be granted.

**C.    Even If Claim 40 Had Not Been Disclaimed, Claim 40 Did Not Create a Relevant Marking Requirement Because the 802.11g Products Allegedly Covered by Claim 40 Practice an Invention That is Separate and Distinct From the Other Claims of the '580 Patent.**

The marking statute limits recovery in an action for infringement when an unmarked "patented article" was made or sold.  35 U.S.C. § 287(a).  In *Toro Co. v. McCullouch Corp.*, 898 F. Supp. 679, 684 (D. Minn. 1995), the court reasoned in relation to Section 287(a)'s reference to an unmarked "patented article" that "the logical reading of the statute indicates that the infringement action under which damages are limited is an infringement action based upon that same unmarked 'patented article.'" ; *see ADC Telecomms., Inc. v. Siecor Corp.*, 954 F. Supp. 820, 832 (D. Del. Feb. 7 1997) (holding that the marking requirement only applied to articles covered by the invention for which the plaintiff was seeking damages).  This approach is consistent with the purpose of the statute, which is to prevent "innocent infringement":  "If the device has not been released into public domain, there is manifestly no possibility of the public

13

innocently copying or imitating that device.  *Mass. Inst. of Tech*, 2004 WL 5268123, *29 (quoting *Toro Co.*, 898 F. Supp. at 684-85). The fact that a product which contains an unrelated device arising under the same patent has been released does not change this result." *Id.*  That means that the damages limitation in Section 287(a) does not apply when "the patentee is pursuing infringement of claims to an invention that is a separate distinct invention from one licensed without any contractual marking obligation." *Id.*

Samsung's motion presents only limited evidence that WiFi products sold by a Rembrandt licensee that are very different from the accused Bluetooth products in this case were covered by disclaimed Claim 40.  Here, even if Claim 40 had not been disclaimed, Rembrandt has presented evidence that establishes there is a genuine issue of material fact as to whether the invention of Claim 40 is separate and distinct from the inventions covered by other claims of the '580 Patent.  *See supra* Section IV.B.3.  Because there is a genuine issue of material fact, Samsung's motion for summary judgment should be denied.

## V.  CONCLUSION

Accordingly, Rembrandt respectfully requests that the Court denies summary judgment that Defendants are not liable for damages occurring prior to the date of the complaint in this case.

Dated: December 15, 2014

Respectfully submitted,

/s/ Amir Alavi

Demetrios Anaipakos (Texas Bar No. 00793258)
danaipakos@azalaw.com
Amir Alavi (Texas Bar No. 00793239)
aalavi@azalaw.com
Jamie Aycock (Texas Bar No. 24050241)
jaycock@azalaw.com
Kyril Talanov (Texas Bar No. 24075139)
ktalanov@azalaw.com
**AHMAD, ZAVITSANOS, ANAIPAKOS, ALAVI
& MENSING, P.C.**
1221 McKinney Street, Suite 3460
Houston, TX 77010
Telephone: 713-655-1101
Facsimile: 713-655-0062

Michael F. Heim (Texas Bar No. 09380923)
mheim@hpcllp.com
Eric Enger (Texas Bar No. 24045833)
eenger@hpcllp.com
Miranda Jones (Texas Bar No. 24065519)
mjones@hpcllp.com
**HEIM, PAYNE & CHORUSH, LLP**
600 Travis Street, Suite 6710
Houston, Texas 77002-2912
Telephone: (713) 221-2000
Facsimile: (713) 221-2021

T. John Ward, Jr.
Texas Bar No. 00794818
jw@wsfirm.com
**WARD & SMITH LAW FIRM**
1127 Judson Road, Suite 220
Longview, TX 75601
Telephone: (903) 757-6400
Facsimile: (903) 757-2323

**ATTORNEYS FOR REMBRANDT WIRELESS
TECHNOLOGIES LP**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 15th day of December, 2014, a true and correct copy of the foregoing document was served on all parties via CM/ECF.

*/s/ Amir Alavi*
Amir A. Alavi

4827-9283-2288, v.  7