Case 2:13-cv-00213-JRG   Document 193   Filed 12/29/14   Page 1 of 9 PageID #: 6889

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| Rembrandt Wireless Technologies, LP,<br><br>                Plaintiff,<br><br>      v.<br><br>Samsung Electronics Co., Ltd.,<br>Samsung Electronics America, Inc.,<br>Samsung Telecommunications America, LLC,<br>and Samsung Austin Semiconductor, LLC,<br><br>                Defendants. | Case No. 2:13-cv-213-JRG-RSP<br><br>JURY TRIAL DEMANDED |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR
MOTION FOR SUMMARY JUDGMENT OF NO DAMAGES PRIOR
TO THE FILING DATE OF THE COMPLAINT FOR FAILURE TO MARK**

**TABLE OF CONTENTS**

I. Introduction ........................................................................................................................ 1
II. Disclaimers Cannot Be Used To Retroactively Excuse Past Conduct ............................... 2
III. The Law Contains No Exceptions to the Marking Statute ................................................. 3
IV. There Are No "Separate and Distinct" Claims At Issue In This Case ............................... 4

I.  **Introduction**

Rembrandt's opposition raises no relevant factual dispute between the parties as to claim 40, and its lengthy discourse as to other claims is irrelevant and a distraction from the merits. Rembrandt does not dispute that the unmarked products practiced claim 40. It is beyond dispute that such products were subject to the marking requirement continuously from 2011 until Samsung filed this summary judgment motion in November 2014. The only dispute is whether Rembrandt can escape the damages limitation imposed by 35 U.S.C. § 287(a) solely by virtue of the actions it belatedly took in December 2014 *after* Samsung filed this motion.

Eight days after Samsung filed its motion for summary judgment on marking, Rembrandt disclaimed claim 40 of the '580 patent, which Rembrandt asserted in this litigation from the outset. In its summary judgment motion, Samsung relied on claim 40 to demonstrate that the licensed, unmarked products are subject to the marking statute. In its opposition, Rembrandt argues, without citing a single case on point, that its December 2014 disclaimer nullifies a four-year violation of the damages limitation imposed by the marking statute.

The marking statute contains no exceptions for such a disclaimer. Nor has Rembrandt's novel exception to the marking requirement ever been recognized by any court. To the contrary, several courts, including the Eastern District of Texas, have rejected a patentee's argument that a disclaimer can be used to avoid consequences for past actions. While Rembrandt contends that a belated disclaimer should retroactively cure a marking violation, it does not explain how Samsung – or anyone else – ever could identify a claim that the patentee, like Rembrandt could not simply disclaim years after the marking violation began. This is demonstrably inequitable and would nullify the marking statute and the policy underlying it. The Court should not countenance Rembrandt's attempt to evade the damages limitation of 35 U.S.C. § 287(a) to save itself from the statutorily-mandated consequence of its failure to mark.

1

II. **Disclaimers Cannot Be Used To Retroactively Excuse Past Conduct**

As shown by the cases Rembrandt cites, disclaiming a claim ends the inquiry into that claim's validity and infringement (because those issues become moot). But none of those cases supports allowing a disclaimer to eliminate the consequences of a patentee's past actions. To the contrary, Courts have recognized in analogous circumstances that disclaimers do not retroactively excuse acts performed while the claim was still in effect.

For example, it is well established that a disclaimer cannot moot counterclaims based on the patentee's assertion of later disclaimed claims. In other words, a patentee cannot cure an improper assertion of a claim by disclaiming it. *National Semiconductor Corp. v. Linear Technology*, 703 F. Supp. 845, 850-52 (N.D. Cal. 1988) (allowing antitrust, patent misuse, and unfair competition counterclaims based on bad faith enforcement of patent claim to proceed despite disclaimer of the improperly asserted claims); *Technimark, Inc. v. Crellin, Inc.*, 14 F. Supp. 2d 762, 764 (M.D. N.C. 1998) (dismissing declaratory judgment claim for lack of jurisdiction, but noting that unfair competition defense based on the disclaimed subject matter will proceed in another case).

Equally well established, disclaiming claims cannot cure inequitable conduct. *Kearney & Trecker Corp. v. Cincinnati Milacron Inc.*, 562 F.2d 365, 372 (6th Cir. 1977) (holding that disclaimer of improperly obtained claims did not save remaining claims from unenforceability).

As another example, disclaiming claims does not retroactively nullify those claims for purposes of claim construction. The patentee in *Allergan Sales, LLC v. Sandoz., Inc.*, argued that the term "brimonidine" in an independent claim should be limited to "brimonidine tartrate." 2013 WL 4854786, at *4 (E.D. Tex. 2013) (Gilstrap, J.). However, disclaimed dependent claims suggested that "brimonidine" also included "brimonidine free base." *Id.* The patentee argued that these disclaimed claims "should be treated as if they never existed" and could not be used to

2

justify construing "brimonidine" to include "brimonidine free base." *Id.* The Court rejected this contention, reasoning that a disclaimer "did not and could not erase the prosecution history record." *Id.* at *8. Nor can a disclaimer "erase" the patentee's failure to mark for four years.

While disclaimers may require that a claim be treated "as if it never existed" for purposes of validity and infringement,[1] these cases noted above demonstrate that disclaimers do not rewrite history or eradicate the patentee's prior actions. Just as the patentees in the cases above could not retroactively whitewash their prior actions by filing a disclaimer, Rembrandt cannot escape its past failure to mark simply by filing a disclaimer. To permit this would effectively neuter the marking statute by permitting patentees to evade the statute with a belated disclaimer after years of noncompliance with the statute.

### III. The Law Contains No Exceptions to the Marking Statute

The marking statute penalizes a patentee who failed to mark by prohibiting recovery of damages prior to the time when notice was provided. 35 U.S.C. § 287. The statute does not provide any exceptions to this rule, including any exception based on filing of a disclaimer. None of Rembrandt's cases provide an exception either. In fact, allowing for such an exception would run contrary to the policy behind the marking statute, which is designed to prevent innocent infringement by a member of the public who sees an unmarked product. Once a patentee has exposed the public to unmarked products, the statute requires that the patentee provide actual notice to the alleged infringer to recover damages.

The most relevant case Rembrandt cites holds – contrary to Rembrandt's novel position – that a terminal disclaimer filed during litigation cannot cure obviousness-type double patenting if it is filed after a patent has already enjoyed an improperly extended term. *Boehringer Ingelheim Int'l GmbH v. Barr Labs., Inc.*, 592 F.3d 1340, 1348 (Fed. Cir. 2010) ("There is nothing that

---

[1] For example, a disclaimed claim cannot be used to obtain past damages.

Boehringer can do now to 'unexercise' the right that it has already improperly enjoyed."). Similar to *Boehringer*, Rembrandt has already exercised its right not to mark. It cannot "unexercise" that right by filing a disclaimer four years later.[2]

## IV. There Are No "Separate and Distinct" Claims At Issue In This Case

Rembrandt argues that § 287's limitation on damages should apply on a per-claim basis rather than on a per-patent basis, citing *Toro Co. v. McCullouch Corp,* 898 F. Supp. 679 (D. Minn. 1995).[3] *Toro* is not controlling. Further, it is distinguishable because its claims were completely "separate and distinct" from one another and its claims to different inventions were licensed separately from one another. Neither of these facts exists here.

First, every claim of the '580 patent requires a device that uses a "first modulation method" as well as a "second modulation method." Rembrandt asserted that a single industry standard infringes every independent claim of the '580 patent, not any "separate and distinct" subset of claims. Third Amended Complaint, Dkt. 84, ¶¶13-15. Thus, the "separate and distinct" claims of *Toro*, in which one set of claims was directed to a "safety switch," and another set of claims was directed to a "pressure ring," are simply not present here. Toro has been distinguished in this District on that very basis. *Mass. Inst. of Tech. v. Abacus Software, Inc.*, 2004 WL 5268123, at *27 (E.D. Tex. Aug. 4, 2004) ("The court in *Toro* accepted Toro's contention "that the `528 patent contains two separate inventions; (1) the safety switch disclosed in claim 1 and (2) the pressure ring disclosed in claims 16 and 17.").

---

[2] In a similar vein, multiple courts have determined that once the marking requirement has been triggered by a patentee selling unmarked products, it cannot be untriggered by the patentee ceasing the sale of those products. *See, e.g.*, *Alpex Computer Corp. v. Parker Bros.*, C.A. No. 85-3969-MC, 1988 WL 507622, at * 2 (D. Mass. Aug. 12, 1998); *Northbrook Digital Corp. v. Browster, Inc.*, 2008 WL 4104695, at *3 (D.Minn. Aug. 26, 2008)

[3] Rembrandt cites one more case, but it is inapposite. In that case, the patentee marked one component of a patented combination, but not another component. The court found that marking one component was enough. *ADC Telecomms., Inc. v. Siecor Corp.*, 954 F. Supp. 820, 832 (D. Del. Feb. 7 1997). Unlike in *ADC*, Rembrandt and its licensees marked nothing.

4

Rembrandt purports to distinguish the other claims of the patent only by pointing to additional elements that are not in claim 40. Opp. at 10-12. However, every element of claim 40 is also in all other claims of the `580 patent ("first modulation method," "second modulation method" and a sequence that "indicates an impending change" from the first modulation method to the second). Because the elements of claim 40 are in all other claims, and because Rembrandt asserted all claims against the same standard, there is no "separate and distinct" invention in the other claims of the patents, even if that could matter.[4]

Second, in *Toro*, the patentee licensed only one of the "inventions" claimed in the patent, and not the other "invention." *Toro*, 898 F. Supp. at 681 ("Toro granted a license to [licensee] authorizing it to make, sell, or use devices containing the safety switch…. Toro did not, however, grant [licensee] a license to make, use or sell devices containing the pressure ring, and explicitly excluded all claims pertaining to the pressure ring from the license's scope."). In contrast, Rembrandt has licensed *all* claims of the `580 patent to Zhone and to Arris. Haddad Decl. Exhs 1 and 3 (Zhone), and 15 (Arris Stipulation). Thus, Rembrandt (or its licensee) was required to mark products that practiced any claim of the '580 patent.

Even where an unmarked product embodied an unasserted claim, this District has found that these distinctions from *Toro* justify application of § 287. *Mass. Inst. of Tech.*, 2004 WL 5268123, at *29-31 & 38 n.16 ("Plaintiffs' contention that… § 287(a) is limited to the particular claim or claims asserted in litigation has been rejected for the reasons given above"); *aff'd* 2004 WL 2568123 at *8-*9. The Court in *Mass. Inst. of Tech.* supported this conclusion with a detailed review of *Toro* and an analysis of the marking statute and its history. Id. at *22-31. Likewise, Rembrandt's reading of 35 U.S.C. § 287(a) should be rejected.

---

[4] Rembrandt's opposition did not address claim 54. Claim 54 is not among the claims that Rembrandt has disclaimed yet is almost identical to Claim 40, just written in a different style. It has none of the additional elements that Rembrandt points to in its opposition at pp. 10-12. Thus for all the same reasons that the 802.11g standard embodies claim 40, it also embodies claim 54.

5

| | |
|---|---|
| Dated: December 29, 2014 | By: /s/ *Gerard A. Haddad* |
| | Michael C. Smith |
| | Texas Bar No. 18650410 |
| | michaelsmith@siebman.com |
| | Siebman, Burg, Phillips & Smith, LLP |
| | 113 E. Austin Street |
| | P.O. Box 1556 |
| | Marshall, Texas 75671 |
| | Tel: (903) 938-8900 |
| | Fax: (903) 767-4620 |
| | |
| | Jeffrey K. Sherwood |
| | Texas Bar No. 24009354 |
| | SherwoodJ@dicksteinshapiro.com |
| | Frank C. Cimino, Jr. |
| | CiminoF@dicksteinshapiro.com |
| | Daniel G. Cardy |
| | CardyD@dicksteinshapiro.com |
| | DICKSTEIN SHAPIRO LLP |
| | 1825 Eye Street NW |
| | Washington, DC 20006-5403 |
| | Tel: (202) 420-2200 |
| | Fax: (202) 420-2201 |
| | |
| | Gerard A. Haddad |
| | HaddadG@dicksteinshapiro.com |
| | Jennifer BianRosa |
| | BianRosaJ@dicksteinshapiro.com |
| | DICKSTEIN SHAPIRO LLP |
| | 1633 Broadway |
| | New York, NY 10019 |
| | Phone: (212) 277-6500 |
| | Fax: (212) 277-6501 |
| | |
| | Jesse J. Jenner |
| | jesse.jenner@ropesgray.com |
| | ROPES & GRAY LLP |
| | 1211 Avenue of the Americas |
| | New York, NY 10036 |
| | Tel: (212) 596-9000 |
| | Fax: (212) 596-9090 |
| | |
| | Gabrielle E. Higgins |
| | gabrielle.higgins@ropesgray.com |
| | Rebecca R. Hermes |

rebecca.hermes@ropesgray.com
ROPES & GRAY LLP
1900 University Avenue, 6th Floor
East Palo Alto, CA 94303
Tel: (650) 617-4000
Fax: (650) 617-4090

Attorneys for Defendants
Samsung Electronics Co., Ltd.,
Samsung Electronics America, Inc.,
Samsung Telecommunications America, LLC,
and Samsung Austin Semiconductor, LLC.

## CERTIFICATE OF SERVICE

I hereby certify that on December 29, 2014, a true and correct copy of the foregoing document was filed electronically in compliance with Local Rule CV-5(a). As of this date, all counsel of record have consented to electronic service and are being served with a copy of this document through the Court's CM/ECF system under Local Rule CV-5(a)(3)(A).

By: /s/ *Gerard A. Haddad*

Gerard A. Haddad