IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| REMBRANDT WIRELESS TECHNOLOGIES, LP | § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. 2:13-CV-213 |
| SAMSUNG ELECTRONICS CO. LTD.; SAMSUNG ELECTRONICS AMERICA, LLC; AND SAMSUNG TELECOMMUNICATIONS AMERICA, LLC. | § § § § § | |
| Defendants. | § § § § § | |

**REMBRANDT'S RESPONSE IN OPPOSITION TO SAMSUNG DEFENDANTS'
RULE 50(b) RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW
AND/OR RULE 59(a) MOTION FOR A NEW TRIAL ON LIABILITY ISSUES**

## Table of Contents

I.  INTRODUCTION ........................................................................................................ 1

II.  TECHNICAL BACKGROUND ................................................................................ 1

III.  LEGAL STANDARDS ............................................................................................. 4

IV.  ARGUMENT ............................................................................................................. 5

A.  Samsung Failed To Prove By Clear And Convincing Evidence That Rembrandt's Patents Were Invalid As Obvious. ........................................................................ 5

1.  None Of The Prior Art, Including The Boer Patent And The Lucent Press Release, Discloses "Different Types" Of Modulation Methods. ................................... 7

2.  Samsung Failed To Prove That It Would Be Obvious to Combine a Master/Slave Protocol With The Boer Patent. ....................................................................... 9

3.  Samsung Did Not Establish That The Prior Art Teaches Reversion. .......................... 13

4.  Samsung Failed To Prove Claim 21 Of The '228 Patent Is Obvious. .......................... 15

5.  Samsung Failed to Make a *Prima Facie* Case of Obviousness as to the Asserted Claims.................................................................................................................. 17

6.  The Jury's Verdict Is Consistent With The PTO's Validity Decisions After Considering The Same Prior Art.......................................................................... 18

7.  Secondary Considerations Support The Jury's Conclusion Of Nonobviousness. ......... 19

8.  There Were No Improper *Ad Hominem* Attacks, And A New Trial Is Not Warranted. ....................................................................................................... 20

B.  The Court Correctly Construed the Term "Of A Different Type."................................... 23

C.  Samsung Is Not Entitled to Judgment as a Matter of Law on Unasserted Claims 1, 19, 23, 29, 41, 52, and 58 of the '580 Patent or Unasserted Claims 1, 26, 28, 29, 50, and 51 of the '228 Patent.......................................................................... 29

V.  CONCLUSION......................................................................................................... 31

## Table of Authorities

**Cases**

*Alcon Research Ltd. v. Barr Labs., Inc.*,
   745 F.3d 1180 (Fed. Cir. 2014)............................................................... 30

*Allergan, Inc. v. Sandoz Inc.*,
   2015 U.S. App. LEXIS 13616 (Fed. Cir. Aug. 4, 2015) ...................... 12

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986)................................................................................. 4

*Cassidian Comms., Inc. v. microDATA GIS, Inc.*,
   2:12-CV-162-JRG, Dkt. 201 (E.D. Tex. Aug. 8, 2014) ...................... 14

*Circuit Check, Inc. v. QXQ Inc.*,
   2015 U.S. App. LEXIS 13620 (Fed. Cir. July 28, 2015)...................... 16

*Commil USA, LLC v. Cisco Sys., Inc.*,
   No. 2:07-CV-341, Dkt. 361 (E.D. Tex. Dec. 29, 2010)........................ 23

*Dresser–Rand Co. v. Virtual Automation Inc.*,
   361 F.3d 831 (5th Cir. 2004) .................................................................. 4

*Edwards v. Sears, Roebuck & Co.*,
   512 F.2d 276 (5th Cir. 1975) ................................................................ 21

*Eiland v. Westinghouse Elec. Corp.*,
   58 F.3d 176 (5th Cir. 1995) .................................................................... 5

*Eli Lilly v. Zenith Goldline Pharms.*,
   471 F.3d 1369 (Fed. Cir. 2006).............................................................. 18

*Finisar Corp. v. DirecTV Group, Inc.*,
   523 F.3d 1323 (Fed. Cir. 2008).............................................................. 13

*Flowers v. S. Reg'l Physician Servs.*,
   247 F.3d 229 (5th Cir. 2001) ................................................................ 24

*Foradori v. Harris*,
   523 F.3d 477 (5th Cir. 2008) ................................................................ 25

*Fractus, S.A. v. Samsung Elec. Co., Ltd.*,
   No. 6:09-CV-2030-LED, Dkt. 1113 (E.D. Tex. June 28, 2012)............. 6

*Gautreaux v. Scurlock Marine, Inc.*,
   84 F.3d 776 (5th Cir. 1996) .................................................................. 21

*Hall v. Freese*,
   735 F.2d 956 (5th Cir. 1984) ................................................................ 21

*i4i Ltd. P'ship v. Microsoft Corp.*,
   598 F.3d 831 (Fed. Cir. 2010)................................................................. 7

*In re Geisler*,
   116 F.3d 1465 (Fed. Cir. 1997).............................................................. 10

*In re Gurley*,
27 F.3d 551 (Fed. Cir. 1994)...........................................................................11

*In re Mouttet*,
686 F.3d 1322 (Fed. Cir. 2012)......................................................................11

*Innogenetics, N.V. v. Abbott Labs.*,
512 F.3d 1363 (Fed. Cir. 2008)......................................................................14

*InTouch Techs., Inc. v. VGo Communs., Inc.*,
751 F.3d 1327 (Fed. Cir. 2014)..............................................................12, 14

*IPPV Enterprises, LLC v. Echostar Comms., Corp.*,
191 F. Supp. 2d 530 (D. Del. 2002)................................................................15

*Johnson v. Ford Motor Co.*,
988 F.2d 573 (5th Cir. 1993) ..........................................................................21

*Jones v. Wal-Mart Stores, Inc.*,
870 F.2d 982 (5th Cir. 1989) ............................................................................5

*KSR Int'l Co. v. Teleflex Inc.*,
550 U.S. 398, 416 (2007)........................................................................10, 12

*Lazare Kaplan Int'l, Inc. v. Photoscribe Techs., Inc.*,
628 F.3d 1359 (Fed. Cir. 2010)......................................................................27

*Microsoft Corp. v. i4i Limited P'ship*,
131 S. Ct. 2238 (2011) ......................................................................................5

*Nobelpharma AB v. Implant Innovations, Inc.*,
141 F.3d 1059 (Fed. Cir. 1998)........................................................................6

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*,
521 F.3d 1351 (Fed. Cir. 2008)......................................................................27

*Orthokinetics, Inc. v. Safety Travel Chairs, Inc.*,
806 F.2d 1565 (Fed. Cir. 1986)........................................................................5

*PACT XPP Tech., AG v. Xilinx, Inc.*,
No. 2:07-CV-563-RSP, Dkt. 441 (E.D. Tex. Aug. 28, 2013)....................6, 29

*Pfizer, Inc. v. Apotex, Inc.*,
480 F.3d 1348 (Fed. Cir. 2007)........................................................................6

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l., Inc.*,
711 F.3d 1348 (Fed. Cir. 2013)......................................................................19

*Reading & Bates Constr. Co. v. Baker Energy Resources Corp.*,
748 F.2d 645 (Fed. Cir. 1984)........................................................................16

*Reeves v. Sanderson Plumbing Prods., Inc.*,
530 U.S. 133 (2000)..................................................................................4, 11

*Retractable Techs., Inc. v. Occupational & Med. Innovations, LTD*,
No. 6:08-CV-120, 2010 U.S. Dist. LEXIS 82069 (E.D. Tex. Aug 11, 2010) .........................29

*Riverwood Int'l Corp. v. R.A. Jones & Co.*,
    324 F.3d 1346 (Fed. Cir. 2003) ................................................................... 15

*Sciele Pharma, Inc. v. Lupin Ltd.*,
    684 F.3d 1253 (Fed. Cir. 2012) ................................................................... 16

*Sibley v. Lemaire*,
    184 F.3d 481 (5th Cir. 1999) ...................................................................... 28

*Soverain Software LLC v. Newegg Inc.*,
    836 F. Supp. 2d 462 (E.D. Tex. 2010) ......................................................... 6

*Spectralytics, Inc. v. Cordis Corp.*,
    649 F.3d 1336 (Fed. Cir. 2011) .......................................................... 4, 8, 11

*Teleflex, Inc. v. Ficosa N. Am. Corp.*,
    299 F.3d 1313 (Fed. Cir. 2002) ................................................................... 28

*The Proctor & Gamble Co. v. Team Tech. Inc.*,
    No. 12-CV-552, Dkt. 130 (S.D. Ohio, July 3, 2014) ................................... 19

*TQP Dev., LLC v. 1-800-Flowers.Com, Inc.*,
    2:11-CV-248-JRG, Dkt. 464 (E.D. Tex. Aug. 17, 2015) ............................. 4

*Transocean Offshore Deepwater Drilling, Inc. v. Maersk Drilling United States, Inc.*,
    699 F.3d 1340 (Fed. Cir. 2012) ................................................................... 19

*U.S. v. Adams*,
    383 U.S. 39 (1966) ...................................................................................... 13

*U.S. v. Morin*,
    627 F.3d 985 (5th Cir. 2010) ...................................................................... 21

*Unigene Labs., Inc. v. Apotex, Inc.*,
    655 F.3d 1352 (Fed. Cir. 2011) ............................................................ 12, 18

*Wahpeton Canvas Co. v. Frontier, Inc.*,
    870 F.2d 1546 (Fed. Cir. 1989) ................................................................... 30

*WesternGeco L.L.C. v. ION Geophysical Corp.*,
    953 F. Supp. 2d 731 (S.D. Tex. 2013) ........................................................ 28

*Whitehead v. Food Max of Miss., Inc.*,
    163 F.3d 265 (5th Cir. 1998) ................................................................. 5, 23

**Statutes**

35 U.S.C. § 282 ................................................................................................ 5

**Rules**

Fed. R. Civ. P. 50(b) ....................................................................................... 30

## I.        INTRODUCTION

The Jury resoundingly found in favor of Rembrandt on the issues in this case.  Dkt. No. 288 (Verdict).  The Jury weighed the evidence presented at trial and decided that the Asserted Claims were both infringed and not invalid, and that appropriate damages were $15.7 million. *Id.* at 2-4.  Having lost with the Jury on every issue, Samsung now seeks to set the verdict aside (although Samsung does not contest the Jury's infringement finding).[1]  But the Jury's verdict is supported by substantial—indeed, compelling—evidence.

Samsung's requests for JMOL and/or a new trial are unwarranted.  Rather than accepting the evidence supporting the verdict, Samsung's briefs ignore that evidence in favor of evidence that the Jury was free to, and apparently did, reject.  And rather than viewing that evidence in the light most favorable to Rembrandt, Samsung's briefs skew and misinterpret the evidence against Rembrandt.  Samsung gives no deference to the Jury's determination of witness credibility, reasonable inferences drawn by the Jury, and the weighing of the evidence in favor of Rembrandt.  That is not the proper legal analysis.  The Jury's verdict should be upheld and no new trial is required.

## II.       TECHNICAL BACKGROUND

The Jury was presented with persuasive evidence that the patents-in-suit "make communication devices work better, faster, and cheaper."  TT 2/9/15 PM (Morrow) at 157:7-11. They do so by providing "seamless communication using different types of modulation methods."  *Id.* at 157:12-14.

---

[1] Samsung filed two motions for JMOL and/or a new trial—one primarily focused on liability issues and the other primarily focused on damages issues.  Dkt. Nos. 328 (Damages Motion) & 329 (Liability Motion; hereinafter, "Mtn.").   In this brief, Rembrandt opposes Samsung's liability motion.   Rembrandt's opposition to Samsung's separate damages motion is filed concurrently herewith.

Before the inventions claimed by the patents-in-suit, devices communicated using a single common type of modulation.  *Id.* at 160:22-161:1; *see also* PX1 ('580 Patent) at 1:27-65, 3:40-48, Fig. 1.  Samsung's primary prior art reference—the Boer Patent[2]—is exemplary of these devices.  DX1192.  There were at least three major drawbacks to such systems; they were inefficient, costly to upgrade, and provided no backwards compatibility.  TT 2/9/15 PM (Morrow) at 161:12-162:4; *see also* PX1 at 1:66-2:15.

The patents-in-suit improve on prior art communications systems (specifically, those systems that used a master/slave protocol) by permitting different types of modulation methods to be seamlessly used together on the same network.  TT 2/9/15 PM (Morrow) at 163:18-23; *see also* PX1 at 2:24-49, 5:47-56, Fig. 4.  Using the claimed inventions, if a new type of modulation is introduced, network devices can begin using that new type of modulation right away, leading to improved efficiency.  TT 2/9/15 PM (Morrow) at 164:14-21.  The claimed inventions also provide cost savings because newer devices using different types of modulation methods can use the existing network without incurring costly upgrades.  *Id.* at 164:22-24.  And the claimed inventions also provide backwards compatibility, leading to improved life spans for older devices.  *Id.* at 164:24-165:1.

According to the claimed inventions, the key to providing seamless communication using different types of modulation methods is to divide network communications into sequences—a "first sequence" and a "second sequence"—and to have something within the first sequence "indicate" the type of modulation used by the second sequence.  *See* TT 2/9/15 PM (Morrow) at 166:11-19; PX1 ('580 Patent) at 11:64-67; *see also* PX1 at 2:34-38 & 7:66-8:5; PX2 ('228

---

[2] The "Boer Patent" is U.S. Patent No. 5,706,428, invented by Mr. Jan Boer, among others.  DX1192.  Samsung mistakenly refers to this patent as the "Lucent Patent," even though it is currently assigned to Conversant Intellectual Property Management, Inc. and has not been assigned to Lucent for more than a decade.  Ex. 1, Boer assignment history at 1, 5.

Patent) at 8:43-47.  This is illustrated by the following annotated excerpt from '580 Figure 8, where the first sequence uses Type A modulation to "indicate" that the second sequence uses Type B modulation:



PX1 at Fig. 8 (annotated); TT 2/9/15 PM (Morrow) at 166:20-23.

About seven years *after* the inventions of the patents-in-suit, the patented technology became an integral part of Bluetooth, in a feature known as Bluetooth Enhanced Data Rate ("EDR").  TT 2/9/15 PM (Morrow) at 169:21-170:1.  Like the claimed inventions, Bluetooth EDR communicates using two different types of modulation methods.  *Id.* at 170:20-22; TT 2/10/15 AM (Morrow) at 18:13-20:8.  And like the claimed inventions, Bluetooth EDR messages have a "first sequence" that "indicates" the type of modulation used by the "second sequence." TT 2/10/15 AM (Morrow) at 21:16-33:21.  This is illustrated by the following annotated excerpt from the Bluetooth EDR specification, in which the first sequence uses "GFSK" (a *frequency* type modulation) to "indicate" that the second sequences uses "DPSK" (a *phase* type modulation):



*Figure 1.3:  Standard Enhanced Data Rate packet format*

3

PX23 (Bluetooth EDR Specification, v2.0) at SAM 99669 (annotated); TT 2/10/15 AM (Morrow) at 21:16-22:10; *see also* TT 2/9/15 PM (Morrow) at 172:19-174:21.  Samsung does not challenge the Jury's determination that its Bluetooth EDR-Compliant devices infringe the patents-in-suit.

## III.    LEGAL STANDARDS

In the Fifth Circuit, a court determining whether to grant JMOL must give "great deference to a jury's verdict." *Dresser–Rand Co. v. Virtual Automation Inc.*, 361 F.3d 831, 838 (5th Cir. 2004).  JMOL is appropriate "only if, when viewing the evidence in the light most favorable to the verdict, the evidence points so strongly and overwhelmingly in favor of one party that the court believes that reasonable jurors could not arrive at any contrary conclusion." *Dresser–Rand*, 361 F.3d at 838.  "If reasonable minds could differ as to the import of the evidence, however, a verdict should not be directed." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250–51 (1986).

It is the jury's responsibility to determine the credibility of each witness's testimony. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150-51 (2000).  If the jury finds a witness is not credible, then it may disregard that witness's testimony or choose to give that witness's testimony little weight relative to the testimony of other witnesses.  *Id.*  Jurors are also permitted to draw reasonable inferences from testimony and exhibits.  *Id.*  The reviewing court "must view the facts in the light most favorable to the prevailing party and must grant the benefit of all reasonable inferences to the party to whom the jury awarded the verdict."  *Spectralytics, Inc. v. Cordis Corp.*, 649 F.3d 1336, 1341 (Fed. Cir. 2011) (citing *Reeves*, 530 U.S. at 151); *TQP Dev., LLC v. 1-800-Flowers.Com, Inc.*, 2:11-CV-248-JRG, Dkt. 464, at 4 (E.D. T Aug. 17, 2015) ("The Court will not make credibility determinations or weigh the evidence, as those are functions for the jury.") (citing *Reeves*, 530 U.S. at 151).   The reviewing court must also

4

"disregard all evidence favorable to the moving party that the jury is not required to believe." *Id.* (quoting *Reeves*, 530 U.S. at 151).

A motion for a new trial "should not be granted unless the verdict is against the great weight, not merely the preponderance, of the evidence." *Jones v. Wal-Mart Stores, Inc.*, 870 F.2d 982, 986 (5th Cir. 1989). "The decision to grant or deny a motion for new trial or remittitur rests in the sound discretion of the trial judge; that exercise of discretion can be set aside only upon a clear showing of abuse." *Eiland v. Westinghouse Elec. Corp.*, 58 F.3d 176, 183 (5th Cir. 1995). "The denial [of a new trial motion] will be affirmed unless, on appeal, the party that was the movant in district court makes a clear showing of *an absolute absence of evidence to support the jury's verdict*, thus indicating that the trial court had abused its discretion in refusing to find the jury's verdict contrary to the great weight of the evidence." *Whitehead v. Food Max of Miss., Inc.*, 163 F.3d 265, 269 (5th Cir. 1998) (emphasis in original, internal quotation marks omitted).

As shown below, sufficient evidence supports the Jury's verdict, and thus it should remain undisturbed.

## IV.   ARGUMENT

### A.   Samsung Failed To Prove By Clear And Convincing Evidence That Rembrandt's Patents Were Invalid As Obvious.

Rembrandt's patents are presumed valid. 35 U.S.C. § 282. To overcome this presumption, Samsung bears the heavy burden to prove invalidity by clear and convincing evidence. *Microsoft Corp. v. i4i Limited P'ship*, 131 S. Ct. 2238, 2242 (2011). A jury may reach a conclusion that a claim is not invalid based solely on the failure of Samsung's evidence to clearly and convincingly establish the contrary, and thus Rembrandt is not required to submit any evidence in support of a conclusion of validity by a court or a jury. *Orthokinetics, Inc. v. Safety Travel Chairs, Inc.*, 806 F.2d 1565, 1570 (Fed. Cir. 1986) ("Under the law set by

Congress, a jury or a court may reach a conclusion that a patent remains valid *solely on the failure of the patent challenger's evidence to convincingly establish the contrary*."); *see also Pfizer, Inc. v. Apotex, Inc.*, 480 F.3d 1348, 1359 (Fed. Cir. 2007) (holding that the "burden of proof never shifts to the patentee to prove validity."). "In order to show that it is entitled to JMOL on its affirmative defense of invalidity, [an infringer] is required to prove the essential elements of that defense to a virtual certainty." *Soverain Software LLC v. Newegg Inc.*, 836 F. Supp. 2d 462, 478 (E.D. Tex. 2010). Accordingly, only in an "extreme" case is it appropriate to grant JMOL in favor of Samsung on an issue regarding which it bore the clear and convincing burden of proof. *Nobelpharma AB v. Implant Innovations, Inc.*, 141 F.3d 1059, 1065 (Fed. Cir. 1998).

Samsung's arguments for JMOL on obviousness are premised largely on the fact that Rembrandt chose not to present a validity rebuttal expert at trial. Mtn. at 4, 11. But as the cases above make clear, rebuttal is not required where, as here, the patent challenger does not carry its burden. *See supra*. Indeed, numerous courts in this district have denied JMOL on invalidity— even when the patentee did not present a validity rebuttal expert—because the defendant failed to carry its burden. *E.g.*, *PACT XPP Tech., AG v. Xilinx, Inc.*, No. 2:07-CV-563-RSP, Dkt. 441, at 18-21 (E.D. Tex. Aug. 28, 2013); *Fractus, S.A. v. Samsung Elec. Co., Ltd.*, No. 6:09-CV-2030-LED, Dkt. 1113, at 18-30 (E.D. Tex. June 28, 2012). Samsung failed to present a prima facie case of obviousness, and it was reasonable for the Jury to reject Samsung's invalidity contention. In fact, Samsung's own expert, Dr. Goodman, agreed during cross-examination as to the differences between the Samsung's prior art references and the claimed invention, including that certain references undermined any reason to combine the prior art. TT 2/11/15 PM (Goodman)

at 48:17-66:18. This made it unnecessary to put a rebuttal expert witness on the stand merely to confirm what Samsung's expert already admitted.

The verdict form contained a single question on validity. Dkt. No. 288 (Verdict) at 3. When a jury answers a general verdict form, courts "uphold such a verdict if there was sufficient evidence to support *any* of the plaintiff's alternative factual theories." *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 849 (Fed. Cir. 2010) (emphasis added). Thus, in order to overturn the Jury's verdict, the Court would have to conclude that Samsung proved *every disputed issued* by clear and convincing evidence.

Samsung advances several invalidity arguments in its brief—none of which have merit. Mtn. at 11-23. Rembrandt addresses those arguments in the order presented by Samsung:

### 1. None Of The Prior Art, Including The Boer Patent And The Lucent Press Release, Discloses "Different Types" Of Modulation Methods.

The Asserted Claims require the capability to communicate using modulation methods of "different types." PX1 ('580 Patent) at 7:63-65, 11:61-62; PX2 ('228 Patent) at 8:51-53. Samsung argues that (1) the Boer Patent or (2) the Boer Patent combined with the Lucent Press Release (DX1185) discloses this limitation. Mtn. at 11-13. But as explained below, the Jury had substantial evidence to reach the opposite conclusion. The Court should not disturb the Jury's finding for at least this reason.

The Court construed the phrase at issue to mean "different families of modulation techniques, such as the FSK family of modulation methods and the QAM family of modulation methods." Claim Construction Order (Dkt. No. 114) at 29. Samsung contends that Dr. Goodman's testimony as to different families is "uncontradicted" and "unrebutted." Mtn. at 13. But Rembrandt's technical expert, Dr. Morrow, provided extensive testimony about modulation techniques, the various characteristics of a carrier signal that can be modified by a modulation

method, and how to determine if two modulation methods are in "different families." TT 2/10/15 AM (Morrow) at 14:2-18:24.

*First*, Dr. Morrow explained that there are only three characteristics of a carrier signal that can be varied during modulation: phase, amplitude, and frequency.[3]   TT 2/10/15 AM (Morrow) at 15:3-16:2.  *Second*, Dr. Morrow explained that two modulation methods are "in different families" (and thus of "different types") when there are "*no overlapping characteristics* [of the carrier] between these two modulation types."  *Id.* at 18:22-24 (emphasis added).  While Dr. Goodman did not agree with Dr. Morrow that there must be no overlapping characteristics, the Jury was entitled to credit Dr. Morrow's testimony and disregard Dr. Goodman's directly conflicting testimony.  *Spectralytics*, 649 F.3d at 1341 ("[T]he reviewing court on JMOL must give credence to the evidence favoring the nonmovant, and must disregard all evidence favorable to the moving party that the jury is not required to believe.") (internal citations omitted).

After crediting Dr. Morrow's testimony that any overlapping characteristic means that two modulation methods are not in "different families," it was straightforward for the Jury to find that neither the Boer Patent nor the Lucent Press Release disclose the claimed "different types" of modulation methods.  It is undisputed that all of the modulation methods disclosed in the Boer Patent and the Lucent Press Release modulate at least one overlapping characteristic of the carrier: phase.   Dr. Goodman unequivocally acknowledged that each of DBPSK and PPM/DQPSK—the modulation methods disclosed in the Boer Patent—modify at least the *phase* characteristic of the carrier during modulation.  TT 2/11/15 PM (Goodman) at 17:8-13; 53:1-

---

[3] Dr. Goodman testified that there was a fourth characteristic that could be modified: position. TT 2/11/15 PM (Goodman) at 15:16-16:5.  But the jury was entitled to credit Dr. Morrow's testimony and disregard Dr. Goodman's testimony.  *See Spectralytics*, 649 F.3d at 1341.  In any event, whether there are three or four characteristics of the carrier does not change whether the Boer Patent and the Lucent Press Release disclose modulation methods "of different types" under the proper legal framework.

54:13.  Similarly, and as Samsung concedes in its brief, Dr. Goodman testified that each of DBPSK and DS/PPM (also referred to as PPM/QAM)—the modulation methods in the Lucent Press Release—vary at least a common *phase* characteristic of the carrier.  *Id.* at 34:7-21; Mtn. at 13.  When coupled with Dr. Morrow's explanation of "different families" (which the Jury was entitled to accept), Dr. Goodman's own testimony establishes that these modulation methods are not "different types" of modulation methods because they each modify the common *phase* characteristic of the carrier.

Because the jury was given substantial evidence that none of the prior art presented during trial, including the Boer Patent and the Lucent Press Release, discloses "different types" of modulation methods as claimed, Samsung's invalidity JMOL must fail.

### 2.   Samsung Failed To Prove That It Would Be Obvious to Combine a Master/Slave Protocol With The Boer Patent.

The Asserted Claims also require a device capable of communicating according to a master/slave relationship.  PX1 ('580 Patent) at 7:53-54, 11:51-52; PX2 ('228 Patent) at 8:18-20. Samsung now concedes that "the [Boer] Patent **does not** disclose the use of a master/slave protocol."  Mtn. at 1 (emphasis added); *see also id.* at 7.  In fact, Samsung's own expert, Dr. Goodman, testified that the Boer Patent discloses a different communication protocol, called "CSMA/CA" (TT 2/11/15 PM (Goodman) at 49:8-17), and that protocol operates in a very different way from a master/slave protocol (*id.* at 49:18-51:10; 51:25-52:25).  Because the Boer Patent does not teach a master/slave protocol, Samsung must resort to arguing obviousness based on a combination of the Boer Patent with the Upender article (DX1190).[4]  Mtn. at 13-16.

---

[4] Samsung never mentions, in its brief or at trial, combining the Lucent Press Release with Upender.

But rather than providing a reason to replace the Boer Patent's CSMA/CA protocol with a master/slave protocol, Upender actually endorses CSMA/CA and teaches away from using a master/slave protocol.  DX1190 at DEF 2343.  Upender provides a head-to-head comparison chart of various protocols, including CSMA/CA and master/slave protocols.  *Id.* (referring to master/slave as "polling"[5]).  Five of the seven categories in the Upender chart favor CSMA/CA, while the remaining two are neutral.  *Id.*  As such, Upender cannot render obvious the claimed inventions; there is no apparent reason to replace Boer's CSMA/CA with a protocol so highly disfavored by Upender.  *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 416, 418 (2007) (requiring an "apparent reason" to make combinations and noting that "when the prior art teaches away from combining certain known elements, discovery of a successful means of combining them is more likely to be nonobvious."); *In re Geisler*, 116 F.3d 1465 (Fed. Cir. 1997) ("[A] prima facie case of obviousness can be rebutted if . . . 'the art in any material respect taught away' from the claimed invention.").

Dr. Goodman was questioned extensively about the teachings of the Upender article and acknowledged several key facts:

- Upender states, with respect to master/slave protocols, "the single-point-of-failure from the master node (or the cost of installing redundant master hardware) *is unacceptable*." TT 2/11/15 PM (Goodman) at 59:20-25; DX1190 at DEF 2338 (emphasis added).

- Upender teaches that "the polling process consumes considerable bandwidth regardless of network load (*poor efficiency*)." TT 2/11/15 PM (Goodman) at 60:1-11; DX1190 at DEF 2338 (emphasis added).

- Upender endorses the same protocol used in the Boer Patent: "we have found that *CSMA/CA . . . is a good choice*." TT 2/11/15 PM (Goodman) at 61:23-62:2; DX1190 at DEF 2343 (emphasis added).

- "Upender says *we recommend CSMA/CA*."  TT 2/11/15 PM (Goodman) at 65:6-7 (emphasis added).

---

[5] Dr. Goodman opined that "polling [] is another name for master/slave."  TT 2/11/15 PM (Goodman) at 10:13-14.

- Dr. Goodman admitted that "if we do a comparison between what [Upender is] showing for polling and what [Upender is] showing for CSMA/CA, [it is] fair to say that the CSMA/CA does better in almost every category." TT 2/11/15 PM (Goodman) at 63:16-20; *see also id.* at 62:9-63:15; DX1190 at DEF 2343 (chart).

In sum, while the Upender article mentions a master/slave protocol, the evidence presented at trial establishes that Upender teaches a person of ordinary skill in the art ("PHOSITA") to use a CSMA/CA protocol—the same protocol used by the Boer Patent—and teaches away[6, 7] from the claimed master/slave protocol.   The Jury was entitled to accept that evidence (and reject Samsung's competing evidence) and conclude that, in light of Upender's disclosure, it would not have been obvious to replace the Boer Patent's CSMA/CA protocol with the claimed master/slave protocol.  *See Spectralytics*, 649 F.3d at 1341.

Samsung argues that there is no evidence to rebut Dr. Goodman's stated rationales for combining the Boer Patent with the master/slave protocol in Upender: simplicity and determinacy.[8]  Mtn. at 16.  This is untrue.  With respect to simplicity, as Dr. Goodman acknowledged, Upender states that "[p]olling . . . [is] simple, but *may not provide sufficient*

---

[6] Despite all the evidence in Upender disparaging master/slave, and despite Upender's clear preference for the CSMA/CA protocol over the master/slave protocol, Samsung argues that Upender does not actually "teach away" from the master/slave protocol.  Mtn. at 20-21.  But the law is clear that a reference teaches away "when a person of ordinary skill, upon reading the reference . . . would be led in a direction divergent from the path that was taken by the applicant."  *In re Gurley,* 27 F.3d 551, 553 (Fed. Cir. 1994).  And as Samsung's own case acknowledges, whether a reference "teaches away" is a question of fact for the jury that must be upheld so long as it is supported by substantial evidence.  *See In re Mouttet*, 686 F.3d 1322, 1334 (Fed. Cir. 2012).  Because there is substantial evidence showing that Upender teaches away, the Court should not disturb the jury's verdict of non-obviousness.

[7] Samsung also argues that Rembrandt's teaching away evidence consists entirely of "attorney argument."  Mtn. at 20.  This is incorrect.  Rembrandt's counsel on closing merely summarized Samsung's trial exhibits, which undisputedly are evidence.  TT 2/13/15 AM at 50:24-52:9.  The jury was free to review the Upender evidence and reach the same conclusion—that it teaches away from a master/slave relationship.  *See Reeves*, 530 U.S. at 150-51; DX1190 at DEF 2243.

[8] Again, Upender does not suggest that master/slave is simpler or provides better determinacy than CSMA/CA; it gives both protocols a neutral rating for those categories.  DX1190 at 2343.  The remaining five categories all favor CSMA/CA.  *Id.*

*flexibility for advanced systems*."  DX1190 at DEF 2342; TT 2/11/15 PM (Goodman) at 61:9-13 (emphasis added).  The system described in the Boer Patent is an example of just such an "advanced system" for which concerns about simplicity are overridden by concerns about flexibility.  DX1192 at 2:6-5:3, Figs. 1-3 (describing an advanced 802.11 wireless LAN).  And Dr. Goodman concedes that at least some aspects of the Boer system are "advanced."  *See* TT 2/11/15 AM (Goodman) at 153:8-14 ("mobile stations 22 are the souped-up versions of mobile station 18. . . . they can also operate with *more advanced* modulation methods") (emphasis added).  Consequently, even though the master/slave protocol may be "simple," Upender does not provide a reason to modify the advanced Boer system with a "simple" communication protocol out of concerns for flexibility.  *See Allergan, Inc. v. Sandoz Inc.*, 2015 U.S. App. LEXIS 13616, at \*24 (Fed. Cir. Aug. 4, 2015) ("An inference of nonobviousness is especially strong where the prior art's teachings undermine the very reason being proffered as to why a person of ordinary skill would have combined the known elements."); *Unigene Labs., Inc. v. Apotex, Inc.*, 655 F.3d 1352, 1361 (Fed. Cir. 2011) ("[A] combination is only obvious to try if a person of ordinary skill has '*a good reason* to pursue the known options.'") (*quoting KSR*, 550 U.S. at 421).

With respect to Dr. Goodman's testimony about determinacy, Upender indicates that the CSMA/CA protocol provides the same determinacy as the master/slave protocol: "good." DX1190 at DEF 2343.  Accordingly, determinacy is not a reason to replace Boer's CSMA/CA protocol with a master/slave protocol, as CSMA/CA already provides good determinacy. *InTouch Techs., Inc. v. VGo Communs., Inc.*, 751 F.3d 1327, 1351 (Fed. Cir. 2014) ("A reason for combining disparate prior art references is a critical component of an obviousness analysis; 'this analysis should be made explicit.'"). The Jury was entitled to make this reasonable

inference based on the evidence presented.  *See Finisar Corp. v. DirecTV Group, Inc.*, 523 F.3d 1323, 1328 (Fed. Cir. 2008).

Samsung makes much of the fact that master/slave relationships were well-known in the art based on the so-called "admitted prior art."  Mtn. at 8-10.  But that lone fact, in and of itself, is irrelevant; even the combination of known elements can be non-obvious.  *See U.S. v. Adams*, 383 U.S. 39, 51-52 (1966).  On the other hand, it is extremely relevant that Dr. Goodman did not present any evidence as to why a POSITA would combine the so-called "admitted prior art" from the patents-in-suit with the Boer Patent.  Rather, throughout his testimony, Dr. Goodman appeared to use the asserted patent themselves as a blueprint to piece together components from the prior art.  This is the epitome of improper hindsight reconstruction, and something that even Dr. Goodman agrees is improper.  TT 2/11/15 PM (Goodman) at 56:23-57:3; TT 2/13/15 AM (Jury Instructions) at 31:25-32:5.

### 3.      Samsung Did Not Establish That The Prior Art Teaches Reversion.

Claims 2 and 59 of the '580 Patent include a limitation directed to "reversion." Specifically, Claim 2 of the '580 Patent recites: "wherein the transceiver is configured to transmit a third sequence after the second sequence, wherein the third sequence is transmitted in the first modulation method and indicates that communication from the master to the slave *has reverted* to the first modulation method."  PX1 ('580 Patent) at 8:20-24 (emphasis added). Claim 59 of the '580 Patent includes a similar limitation.  *Id.* at 12:12-17.  In essence, these claim limitations require, after having used the second type of modulation method, the capability to "revert" back to communicating using the first type of modulation method; systems falling within the scope of this claim do not get "stuck" communicating using the second type of modulation method.  *See* TT 2/10/15 AM (Morrow) at 38:22-39:11.

13

Nowhere in Dr. Goodman's testimony did he specifically identify any portion of the Boer Patent—or any other piece of prior art, for that matter—that teaches the claimed "reversion." The sum total of his testimony on this limitation is as follows:

> Q:  Referring to Claim Elements 2(a) and 2(b) in the '580 Patent, where are they found in the prior art?
>
> A:  So the device we've talked about is the access point, and wherein the third sequence is transmitted in the first modulation method, this third sequence corresponds to the signal and service fields in the later packet, and the later packet is – doesn't change modulation methods, which is what is required in Claim 2.

TT 2/11/15 PM at 22:18-23:2.  In addition to reflecting a fundamental misunderstanding of the claim language, Dr. Goodman's testimony is gibberish and completely unsupported by the Boer Patent. TT 2/11/15 PM (Goodman) at 22:18-23:2.  Nowhere does Dr. Goodman cite to where the Boer Patent explicitly teaches[9] any third sequence with "reversion" to communication using a different modulation method—much less the claimed reversion to a "first modulation" of a "different type."  *Id.*; *see also* DX1192.  In short, Dr. Goodman's conclusory and confusing testimony does not constitute clear and convincing evidence necessary to support judgment as a matter of law on invalidity.  *See, e.g.*, *InTouch*, 751 F.3d at 1351 (Fed. Cir. 2014) ("Such vague testimony would not have been helpful to a lay jury in avoiding the pitfalls of hindsight that belie a determination of obviousness.") (citing *Innogenetics, N.V. v. Abbott Labs.*, 512 F.3d 1363, 1373-74 (Fed. Cir. 2008)); *Cassidian Comms., Inc. v. microDATA GIS, Inc.*, 2:12-CV-162-JRG, Dkt. 201, at 18 (E.D. Tex. Aug. 8, 2014) ("[The expert's] testimony regarding whether [a reference] discloses the first two elements of claim 1 is entirely conclusory, lacking any of the specificity required by the 'clear and convincing evidence' standard.  Therefore, the Court finds

---

[9] Samsung has not argued that it would be obvious to modify the Boer Patent to include the claimed "reversion."  Thus, unless Samsung provides clear and convincing evidence that the Boer Patent explicitly discloses this claim element (*i.e.*, anticipation), Samsung's JMOL must fail.

that no reasonable jury, based on these naked conclusions, could have found that [a reference] discloses the first two elements of claim 1.").[10]

### 4.   Samsung Failed To Prove Claim 21 Of The '228 Patent Is Obvious.

Claim 21 of the '228 Patent requires "the first information that is included in the first message comprises the first message address data."  PX2 ('228 Patent) at 10:28-30.  Samsung concedes that its primary reference—the Boer Patent—does not teach this limitation, but nonetheless argues that it would be obvious to combine the Boer Patent with either (1) the so-called "admitted prior art" or (2) U.S. Patent No. 5,537,398 to Mr. Kazimierz Siwiak ("the Siwiak Patent")[11] (DX1188) to arrive at the claimed "first message address data."  Mtn. 16-19.  Samsung's arguments fail for a multitude of reasons.

With respect to the so-called "admitted prior art" relied upon by Dr. Goodman, nowhere in the '580 Patent—and certainly not at '580 3:62-65 and Fig. 8, the portions identified by Dr. Goodman—did the applicant ever admit that including "address data" in the message header was known in the prior art.  Rather, the '580 specification merely states that "[i]n a multipoint system, the address of the trib with which the master is establishing communication is also transmitted during the training interval."  PX1 ('580 Patent) at 3:62-65.  That statement is not a clear and convincing admission about the prior art; nowhere do the words "prior art," "conventional," or "traditional" appear.  Instead, that statement references the inventor's own work, which means it cannot be prior art as a matter of law.  *See* PX13; *Riverwood Int'l Corp. v. R.A. Jones & Co.*, 324 F.3d 1346, 1355 (Fed. Cir. 2003) ("[o]ne's own work may not be

---

[10]  Samsung may argue in rebuttal that Dr. Goodman's demonstrative illustrates the claimed "reversion."  But a demonstrative is not evidence, and it cannot serve as the basis for Samsung's JMOL motion.  TT 2/13/15 AM at 99:4 (the Court's jury instruction that "Demonstratives are not evidence."); *see also IPPV Enterprises, LLC v. Echostar Comms., Corp.*, 191 F. Supp. 2d 530, 565 (D. Del. 2002).

[11]  Samsung refers to this patent as the "Motorola Patent" even though it is not currently assigned to Motorola.  *See* Ex. 2 (Siwiak assignment history) at 1.

considered prior art in the absence of a statutory basis"); *Reading & Bates Constr. Co. v. Baker Energy Resources Corp.*, 748 F.2d 645, 650 (Fed. Cir. 1984).   And Figure 8 relates to the claimed invention and not to any prior art.   PX1 ('580 Patent) at 3:26-27, 4:42-44, Fig. 8; PX3 ('580 Prosecution History) at RIP 3537.

Perhaps recognizing the problems with the alleged "admitted prior art," Samsung's fallback reference is the Siwiak Patent.   But the Siwiak Patent was expressly considered by the Patent Office during prosecution.   PX3 ('580 Prosecution History) at RIP 91; PX4 ('228 Prosecution History) at RIP 4241; TT 2/11/15 PM (Goodman) at 66:5-18.   This makes it especially difficult for Samsung to meet its burden of proving by invalidity clear and convincing evidence.   *Sciele Pharma, Inc. v. Lupin Ltd.*, 684 F.3d 1253, 1260 (Fed. Cir. 2012) ("[I]t may be harder to meet the clear and convincing burden when the invalidity contention is based upon the same argument on the same reference that the PTO already considered.").   Further, the Siwiak Patent is directed to pagers—a very different technology than the modems disclosed by the patents-in-suit.   *Compare* DX1188 (Siwiak) at 1:8-11 ("[T]his invention relates to a method and apparatus for a high speed simulcast multi-rate data messaging and paging system") *with* PX1 ('580 Patent) at 1:19-20 ("The present invention relates generally to the fields of data communications and modulator/demodulators (modems)").   Siwiak never once uses the words "master," "slave," or "polling."   DX1188.   Drawing all inferences in favor of Rembrandt, it is reasonable to assume that the Jury concluded that Siwiak was non-analogous art that could not be used to render '228 claim 21 obvious.   *See Circuit Check, Inc. v. QXQ Inc.*, 2015 U.S. App. LEXIS 13620, at *8-9 (Fed. Cir. July 28, 2015) (refusing to disturb the jury's presumed finding that certain references were non-analogous prior art because it was supported by substantial evidence).

### 5.    Samsung Failed to Make a *Prima Facie* Case of Obviousness as to the Asserted Claims.

Most importantly, Samsung failed to make a *prima facie* case of obviousness for the Asserted Claims.  As discussed above, Samsung had to piece together a handful of prior art references that, according to Dr. Goodman, individually disclose certain elements of the claim. To show "different types" of modulation methods, Dr. Goodman relies on the Boer Patent and the Lucent Press Release.  To show a "master/slave protocol," Dr. Goodman relies on the Upender article.  And to show "first message address data," Dr. Goodman relies on so-called Admitted Prior Art and the Siwiak Patent.

All of the Asserted Claims include "different types" and a "master/slave protocol," but nowhere does Dr. Goodman opine that it would be obvious to combine *all of* (1) the Boer Patent *and* (2) the Lucent Press Release *and* (3) the Upender article.  And claim 21 of the '228 Patent has many elements—"different types" of modulation methods, a "master/slave protocol," and "first message address data"—but again, nowhere does Dr. Goodman opine that it would be obvious to combine *all of* (1) the Boer Patent *and* (2) the Lucent Press Release *and* (3) the Upender article *and* (4) the "Admitted Prior Art" *and* (5) the Siwiak Patent.

To make out a *prima facie* case of obviousness, Samsung was required to explain not only where each of those elements were found in the prior art, but also why a POSITA would have combined all of them together to arrive at the claimed invention.[12]  Samsung failed to do so. Accordingly, Samsung failed to present a *prima facie* case of obviousness.  *Unigene*, 655 F.3d at

---

[12] It is not surprising that Dr. Goodman was unable to articulate a reason to combine all five of his prior art references; they are all directed to very different problems.  For example, the jury reasonably concluded that it would not be obvious to combine a patent directed to wireless LANs (Boer) with a patent directed to pagers (Siwiak).  DX1192 at 2:6-8 ("[T]here is shown a preferred embodiment of a wireless LAN (local area network) 10 in which the present invention is implemented."); DX1188 at 2:25-27 ("[T]he present invention comprises a messaging system for transmitting messages to a plurality of data communication receivers (*i.e.*, pagers, selective call receivers).")

1361 ("[T]o establish a prima facie case of obviousness based on a combination of elements in the prior art, the law requires a motivation to select the references and to combine them in the particular claimed manner to reach the claimed invention") (*quoting Eli Lilly v. Zenith Goldline Pharms.*, 471 F.3d 1369, 1380 (Fed. Cir. 2006)); *InTouch*, 751 F.3d at 1351 ("[I]t can be important to identify a reason that would have prompted a person of ordinary skill in the relevant field to combine the elements in the way the claimed new invention does . . . because inventions in most, if not all, instances rely upon building blocks long since uncovered, and claimed discoveries almost of necessity will be combinations of what, in some sense, is already known.").

The Jury properly concluded that Samsung failed to prove that this claim is invalid.

### 6. The Jury's Verdict Is Consistent With The PTO's Validity Decisions After Considering The Same Prior Art.

As a further check on the soundness of the Jury's verdict, it is notable that the Jury reached the same conclusion as to the Asserted Claims that the Patent Office did when considering the same prior art. During the original prosecution, the Patent Office considered the Siwiak Patent and the "Admitted Prior Art." PX3 ('580 Prosecution History) at RIP 91; PX4 ('228 Prosecution History) at RIP 4241; TT 2/11/15 PM (Goodman) at 66:5-18. And during the IPR proceedings,[13] Samsung raised combinations based on the "Admitted Prior Art," the Boer Patent, and the Upender article. PX897 ('580 IPR Petition); PX902 ('228 IPR Petition). Thus, the Patent Office considered the same art as did the Jury.

In both proceedings, the Patent Office determined that the Asserted Claims were valid over that art for every Asserted Claim. PX3 ('580 Prosecution History) at RIP 4041; PX4 ('228 Prosecution History) at RIP 4301; PX889 ('580 IPR Decision); PX893 ('228 IPR Decision).

---

[13] Samsung succeeded in excluding evidence of the Inter Partes Review ("IPR") decisions due to concerns of undue prejudice. *See* Dkt. No. 248 (MIL Order) at 11. Consequently, the IPR ruling is not in evidence. It does provide insight, however, into the reasonableness of the Jury's Verdict on these issues.

Indeed, the PTAB refused to even institute IPR as to the Asserted Claims, concluding that Samsung had not shown a "reasonable likelihood of prevailing" on obviousness, which proved to be correct at trial.  PX889 ('580 IPR Decision) at 15; PX893 ('228 IPR Decision) at 15.  If these references do not render the Asserted Claims invalid for obviousness under the PTAB's less stringent "reasonable likelihood," these references also do not establish obviousness—as a matter of law—under the more burdensome "clear and convincing" evidence standard.  *See The Proctor & Gamble Co. v. Team Tech. Inc.*, No. 12-CV-552, Dkt. 130, at 21-24 & 77 (S.D. Ohio, July 3, 2014) (noting the "reasonable likelihood standard" applied by the PTAB "is significantly lower than the 'clear and convincing' burden in this litigation").

### 7.  Secondary Considerations Support The Jury's Conclusion Of Nonobviousness.

To protect against the prejudice of hindsight bias, the obviousness analysis requires consideration of objective indicia of non-obviousness, such as praise of the invention, licenses showing industry respect for the invention, widespread adoption of the claimed technology, and long felt but unsolved need.  *Transocean Offshore Deepwater Drilling, Inc. v. Maersk Drilling United States, Inc.*, 699 F.3d 1340, 1349 (Fed. Cir. 2012); *Power Integrations, Inc. v. Fairchild Semiconductor Int'l., Inc.*, 711 F.3d 1348, 1356 (Fed. Cir. 2013).  At trial, Rembrandt presented evidence supporting the existence of several secondary considerations, from which the Jury could draw an inference of non-obviousness.

With respect to praise of the invention, throughout the testimony of Dr. Morrow, Rembrandt established that the patents-in-suit cover Bluetooth Enhanced Data Rate ("EDR").  *E.g.*, TT 2/10/15 AM (Morrow) at 56:1-6 ("[T]he aspects of [Mr. Bremer's] invention of making communication seamless using two different modulation types, well, that forms the backbone of EDR.").  Dr. Morrow then connected the claimed technology to several documents showing

19

industry praise.  *Id.* at 171:5-172:18.  For example, the "Bluetooth Technology Roadmap" whitepaper (DX1043), which was authored by a Bluetooth industry group, lauded numerous advantages of EDR (the claimed technology).  TT 2/9/15 PM (Morrow) at 171:5-172:2; DX1043 at 20.  Even Samsung's own document (PX238) identified "three key advantages" of EDR.  TT 2/9/15 PM (Morrow) at 172:3-18; PX238 at SAM 2393794.  In fact, the Jury learned from Samsung's own employee that EDR was the "most important feature" of the Bluetooth 2.0 Specification.  TT 2/10/15 PM (Lim) at 6:13-19; *see also* TT 2/10/15 AM (Morrow) at 105:19-106:23 (Bluetooth 2.0 was a "major release").

With respect to industry licenses, Rembrandt presented evidence through its damages expert, Mr. Weinstein, that Blackberry—a sophisticated company—had taken a license to the patents-in-suit.  TT 2/10/15 PM (sealed) (Weinstein) at 16:13-21:5 (discussing the Blackberry license).  And with respect to the widespread adoption of the claimed technology, Samsung's engineer testified that he was not aware of any "Bluetooth chips that are on the market today that don't have EDR."  TT 2/10/15 PM (Lim) at 6:1-4.

Finally, with respect to long-felt need in the industry, Mr. Hall (who Samsung identified as the developer of EDR, TT 2/11/15 AM (Hall) at 69:18-22) testified that he spent between three and three-and-a-half years working on EDR, over thousands of hours, thereby demonstrating that the EDR was not obvious even to a person of extraordinary skill in the art.  TT 2/11/15 AM (Hall) at 96:11-23.  In sum, the evidence of secondary considerations presented at trial lends support to the Jury's finding of non-obviousness.

### 8.   There Were No Improper *Ad Hominem* Attacks, And A New Trial Is Not Warranted.

In the Fifth Circuit, "a new trial will not be granted, even if counsel's remarks are improper, unless after considering the record as a whole the court concludes that *manifest*

*injustice* would result from letting the verdict stand." *Gautreaux v. Scurlock Marine, Inc.*, 84 F.3d 776, 783 (5th Cir. 1996); *Johnson v. Ford Motor Co.*, 988 F.2d 573, 582 (5th Cir. 1993). And when no objection is raised to counsel's remarks (as is the case here), "improper argument may be the basis for a new trial where no objection has been raised only 'where the interest of *substantial justice* is at stake.'" *Hall v. Freese*, 735 F.2d 956, 961 (5th Cir. 1984) (emphasis added) (quoting *Edwards v. Sears, Roebuck & Co.*, 512 F.2d 276, 286 (5th Cir. 1975)); *see also U.S. v. Morin*, 627 F.3d 985 (5th Cir. 2010).   This exacting standard is not met here.   As described below, Rembrandt did not make improper remarks—let alone any that would result in "manifest" or "substantial" injustice.

During closing argument, Samsung's counsel showed the following slide to the jury, which purportedly compares Figure 1 of the Boer/Lucent Patent (left) with Figure 4 of the patents-in-suit (right):



TT 2/13/15 AM at 75:5-16.   In addition to rotating and coloring Boer/Lucent Figure 1, Samsung's counsel modified that figure by prominently adding and emphasizing the words "master" and "slave" to make it appear more like the patents-in-suit, even though the Boer Patent clearly taught a technique that was different than a Master/Slave control scheme.   *See* DX1192 (Boer) at DEF 2371.   Importantly, these "master" and "slave" modifications to Boer/Lucent Figure 1 were new to the jury; they were not found in the demonstratives previously used with Dr. Goodman.   *See* Ex. 3 (Goodman Demonstratives) at 35.   When Samsung's counsel failed to acknowledge during closing argument that Samsung had modified the Boer/Lucent figure, Rembrandt's counsel rightly pointed this out to the jury during rebuttal and implored the jury to compare Samsung's demonstrative with the actual Boer/Lucent figure.   TT 2/13/15 AM (Closing) at 89:21-90:14.   There was nothing improper about this conduct.   If any misconduct occurred, it was the way in which Samsung's counsel altered the figure from the Boer Patent without clearly and expressly indicating that it was doing so.   Rembrandt's closing argument was not an *ad hominem* attack, but instead pointed out a clearly-misleading, substantive problem with Samsung's demonstrative.

Samsung attempts to excuse its own behavior by arguing that "Rembrandt did not assert any objection to this demonstrative when it was provided to Rembrandt the night before closing arguments."  Mtn. at 21.  But there is nothing *per se* objectionable about the demonstrative.  The demonstrative only becomes problematic when it is displayed to the jury without a clear explanation of any alterations.   Rembrandt assumed that Samsung's counsel would explain its alteration to the Boer figure during his argument, but it did not.  TT 2/13/15 AM (Closing) at 75:5-16.  In view of this lapse, Rembrandt's counsel was obliged on rebuttal to make clear to the Jury that the Boer/Lucent figure had been altered.   There is no "manifest injustice" in

Rembrandt's counsel pointing out that the figure shown to the Jury was not in fact the figure in the Boer Patent, but rather an altered figure created by Samsung's counsel.

Samsung's other excuses are similarly unavailing.  For example, Samsung suggests that the demonstrative is the same as that used by Dr. Goodman.  Mtn. at 22.  While the colors may be the same, the demonstrative used with Dr. Goodman did not include the words "master" and "slave" written into the boxes of Figure 1 of the Boer Patent.  In addition, Samsung argues that the demonstrative "accurately summarized Samsung's evidence . . . that it would have been obvious to use a master/slave protocol with the system of the Lucent Patent." *Id.*  But nothing on the demonstrative indicated that it was a combination of the Lucent Patent with other art.  Instead, it says "Lucent Patent" and shows call-out lines, indicating to the Jury that Samsung's counsel was replicating Figure 1 of the Boer Patent.  Absent a clear explanation to the contrary, this demonstrative was disingenuous, at best.

In sum, the comments that Samsung has identified stem directly from its own misleading conduct. Rembrandt was entitled to make it entirely clear to the Jury that Samsung had modified Figure 1 of the Boer Patent. The identified comments in this case are not akin to the inexcusable attempt to appeal to the local bias and religious prejudices of the Jury in litigation involving a Jewish inventor in *Commil*.  *See Commil USA, LLC v. Cisco Sys., Inc.*, No. 2:07-CV-341, Dkt. 361, at 3-4 (E.D. Tex. Dec. 29, 2010).  Similarly, the identified comments are not comparable to the improper appeal to local bias and "Golden Rule" argument that warranted a new trial in *Whitehead*.  *See Whitehead*, 163 F.3d at 275-76.  Accordingly, a new trial is not warranted here.

### B.     The Court Correctly Construed the Term "Of A Different Type."

This is now the *sixth time* that Samsung has argued against the Court's construction of "modulation method [] of a different type" / "different types of modulation methods."  *See* Dkt. No. 102 (Defs' Claim Construction Brief) at 16-20; Ex. 4 (Claim Construction Hearing

Transcript) at 45:6-57:21, 65:22-68:18; Dkt. No. 120 (Defs' Objections to Claim Construction Order) at 3-4; Dkt. No. 124 (Defs' Reply In Support Of Objections) at 2-3; Dkt. No. 132-1 (Defs' Ltr. Br.); Dkt. No. 148-1 (Defs' Reply Ltr. Br.). In each instance, the Court rejected Samsung's arguments and correctly construed the term. *See* Dkt. No. 114 (Claim Construction Order) at 22-29; Dkt. No. 157 (Order re Ltr. Br.); TT 2/9/15 PM (Preliminary Jury Instructions) at 16:13-17:21; Ex. 5 (Claim Construction Chart from Juror Notebook); TT 2/13/15 AM (Final Jury Instructions) at 22:24-23:13.[14] Enough is enough. As its own counsel has admitted, Samsung continues to "beat a dead horse here." Ex. 4 (Claim Construction Hearing Transcript) at 57:7.

In Samsung's latest attempt to revisit *Markman*, Samsung argues that the Court's construction of "different types" warrants judgment as a matter of law or a new trial. Mtn. at 23. Samsung, however, waived its right to file a renewed post-verdict Rule 50(b) motion for JMOL on any alleged error in the court's claim construction because it did not seek JMOL on this issue under 50(a). *See* TT 2/12/15 PM (Samsung's initial oral 50(a) motion) at 40:22-56:22; Dkt. No. 283 (Samsung's subsequent written 50(a) motion) at 2 (identifying as the issues on which Samsung moved for JMOL as "infringement, willful infringement, obviousness, lack of written description and damages."). The law is clear that "[i]f a party fails to move for judgment as a matter of law under Federal Rule of Civil Procedure 50(a) on an issue at the conclusion of all the evidence, that party waives . . . its right to file a renewed post-verdict Rule 50(b) motion [on that issue]." *Flowers v. S. Reg'l Physician Servs.*, 247 F.3d 229, 238 (5th Cir. 2001).

---

[14] Samsung mistakenly suggests that Judge Gilstrap (as opposed to Judge Payne) has not indicated his construction of "different types" of modulation methods. Mtn. at 23, fn. 15. That is incorrect. In both the Preliminary and Final Jury Instructions, Judge Gilstrap adopted Judge Payne's claim construction. TT 2/9/15 PM (Preliminary Jury Instructions) at 16:13-17:21; Ex. 5 (Claim Construction Chart from Juror Notebook); TT 2/13/15 AM (Final Jury Instructions) at 22:24-23:13.

Samsung's request for a new trial on this issue under Rule 59 also fails. Per Fifth Circuit law, "[a] new trial will not be granted based on trial error unless, after considering the record as a whole, the court concludes that manifest injustice will result from letting the verdict stand." *Foradori v. Harris*, 523 F.3d 477, 506 (5th Cir. 2008).  Samsung has failed to demonstrate that there was any error, let alone one that would cause "manifest injustice."  Most of Samsung's attempt to show such an error has been to merely reuse arguments that it has already presented to the court.  *See* Dkt. No. 102; Dkt. No. 120.

For example, Samsung asks this Court yet again to read a limitation from the specification into the claims and decide that the term "different type" requires that modulation methods be "incompatible" with each other.  Mtn. at 24.  However, as Rembrandt has explained before, this argument must fail because the patentee expressly defined "different types" to mean "different *families* of modulation techniques, such as the FSK family of modulation methods and the QAM family of modulation methods" in the prosecution history.  PX3 ('580 Prosecution History) at RIP 3536; Dkt. No. 103 at 6 (emphasis added).  This definition was given to the examiner in order to specify the claimed subject matter for patenting (*id.*), and therefore was not merely a "self-serving" statement, as Samsung continues to assert (*see* Mtn. at 27).  Samsung does not contest that the word "type" is a synonym of the word "family."  Dkt. No. 103 at 6. And the use of "type" within the specification is consistent with use of the term "family."  Dkt. No. 103 at 7; PX1 ('580 Patent) at, *e.g.*, 5:47-6:35.  Moreover, the construction of "type" is consistent with the term's plain meaning, use in the specification, and the prosecution history. *See* Dkt. No. 103 at 6-7.  Samsung seeks to ignore that plain and ordinary meaning altogether and instead seeks to construe a separate term—"different"—to mean "incompatible."  *Id.*

Samsung also continues to assert that the Court's construction of "families" conflicts with dependent claim 43[15] of the '228 Patent.  Mtn. at 26, n.18; Ex. 4 (Claim Construction Hearing Transcript) at 53:17-54:20.  The Court has already considered that argument and determined there is no conflict.  Dkt. No. 114 at 27.  Independent claim 26 of the '228 Patent recites "a transceiver configured to transmit signals over a communications medium to a slave device using at least two different types of modulation methods . . . the at least two different types of modulation methods comprising a first modulation method and a second modulation method."[16] PX2 ('228 Patent) at 11:35-43.  Thus, each of the "at least two different types" of modulation methods may itself comprise a "first" and "second modulation method" (for a total of four total modulation methods, some of which may be the same).  Dependent claim 43 further narrows claim 26 by requiring that "at least one of said first or second modulation methods implements phase modulation."  *Id.* at 13:4-6.  So both the first and second modulation method that comprise one type could implement phase modulation. In view of the above, claim 43's requirement that "at least one of the first or second modulation methods implements phase modulation" refers to a first and second method *within the same family*.  This interpretation maintains the integrity of the claim construction and the consistency of the claims.

Contrary to Samsung's assertion, the Court's claim construction sufficiently "resolve[d] the legal question of the scope" of the claims.  *See* Mtn. at 25.  Samsung essentially argues that the Court, upon construing the term "of a different type" to mean "different families of modulation techniques," should have further construed the term "families."  However, the

---

[15] Claim 43 of the '228 Patent and its dependent claims were not asserted at trial.  TT 2/9/15 AM (Voir Dire) at 44:7-10 ("The patents in this case have many claims in them, but there are only three that are being asserted here. In the '580 Patent, those are Claims 2 and 59; and in the '228 Patent, it's Claim 21.").  Unasserted claims do not present the type of "manifest injustice" that warrants a new trial.

[16] This claim language differs from that of the Asserted Claims.

Federal Circuit has made it clear that "district courts are not (and should not be) required to construe *every* limitation present in a patent's asserted claims." *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008).

It is the Jury's responsibility to determine infringement, not the District Court's. Whether certain modulation methods were in a "different family" is a <u>factual</u> question reserved for the Jury. There is no requirement that the Court further construe every word used *within* a claim construction. *See Lazare Kaplan Int'l, Inc. v. Photoscribe Techs., Inc.*, 628 F.3d 1359 (Fed. Cir. 2010). In *Lazare Kaplan*, the parties had agreed that the term "positional accuracy of placement" meant that "[d]uring inscription . . . the center of each spot is within ± 1.1 microns of the desired position of the spot on the diamond." *Id.* at 1375. However, at trial, one party argued that this limitation was met if "each graphitized spot on the diamond was placed within ± 1 micron of a predetermined reference point on the diamond" and the other argued that it was met if "'[w]hen you put down a spot' you can put another spot 'right next to it.'" *Id.* One party attempted to argue, as Samsung does here, that the court's "failure" to further construe this limitation violated *O2 Micro*. *Id.* But the Federal Circuit concluded that the dispute "concern[ed] factual questions relating to the test for infringement and not the legal inquiry of the appropriate scope of the 'positional accuracy' limitation." *Id.* at 1376. This Court has properly construed the claim language, and the Parties' dispute of what constitutes "different families" was a fact question properly left to the Jury.

The only new argument in Samsung's latest claim construction brief is that the Court's construction must be incorrect because, under Rembrandt's view of "different families," the specification allegedly does not disclose an example of "different types" of modulation methods. Mtn. at 26. As Samsung is bringing this argument for the first time after trial, it is waived.

*WesternGeco L.L.C. v. ION Geophysical Corp.*, 953 F. Supp. 2d 731, 740 (S.D. Tex. 2013) (mem.) ("If an issue is raised for the first time on a motion for a new trial, the issue is waived."). However, even if the court were to consider this argument, it fails for two reasons. *First*, Rembrandt's provisional application, incorporated by reference into the '580 and '228 Patents, discloses the Frequency Shift Keying ("FSK") modulation.  PX5 (Provisional Appl'n) at 5 (disclosing FSK); PX1 ('580 Patent) at 1:8-15 (incorporating the provisional application).  And the patent specification itself discloses Quadrature Amplitude Modulation ("QAM").  PX1 at 2:4 (disclosing QAM).  FSK varies only the frequency characteristic of the carrier.  TT 2/9/15 PM (Morrow) at 170:24-171:1.   Therefore, FSK would be in a different family from QAM modulation, which varies the amplitude and phase characteristics of the carrier.  TT 2/11/15 PM (Goodman) at 17:17-21; TT 2/10/15 AM (Morrow) at 18:22-24.  *Second*, Samsung's argument assumes that a person of ordinary skill in the art would need to be given examples of other modulation modes.  However, as the testimony at trial established, the existence of amplitude, phase, and frequency modulations is common knowledge to those of skill in the art.  TT 2/9/15 PM (Morrow) at 90:14-21; TT 2/10/15 AM (Morrow) at 14:17-18:4.

Even if Samsung could show that the court's claim construction was error, it has not met its burden to prove that this error was harmful.  *See Sibley v. Lemaire*, 184 F.3d 481, 487 (5th Cir. 1999) ("the burden of showing harmful error rests on the party seeking the new trial"). Samsung has not even argued that the Jury would have decided anything differently under Samsung's proposed claim construction.  Samsung's construction is broader than Rembrandt's, and therefore would not alter the Jury's finding of infringement. *See Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1329 (Fed. Cir. 2002) ("If a  reasonable juror could have found literal infringement under a more narrow reading of claim 1, then the same reasonable juror could not

have avoided finding literal infringement under the correct, broader construction of the claim"). And as shown in Section A above, there are several other arguments that would preclude an obviousness finding beyond the claim construction. Consequently, even if the Court found error in its construction, Samsung has not met its burden to prove that this error was harmful and entitles Samsung to a new trial.

### C.  Samsung Is Not Entitled to Judgment as a Matter of Law on Unasserted Claims 1, 19, 23, 29, 41, 52, and 58 of the '580 Patent or Unasserted Claims 1, 26, 28, 29, 50, and 51 of the '228 Patent.

Samsung improperly requests that this Court grant JMOL as to all of the claims that were asserted in the Pretrial Order but dropped before trial ("the Unasserted Claims").[17]  Mtn. at 28. Samsung's request should be denied for several reasons.

*First*, Samsung waived its right to JMOL on counterclaims of non-infringement for the Unasserted Claims because it did not introduce any evidence supporting non-infringement of those claims at trial.  *Retractable Techs., Inc. v. Occupational & Med. Innovations, LTD*, No. 6:08-CV-120, 2010 U.S. Dist. LEXIS 82069, at *6 (E.D. Tex. Aug 11, 2010) (denying JMOL of non-infringement for unasserted claims because defendants failed to present any evidence in support of its counterclaim of non-infringement); *PACT XPP Tech., AG v. Xilinx, Inc.*, No. 2:07-CV-563-RSP, Dkt. 441, at 21-23 (E.D. Tex. Aug. 28, 2013) (denying JMOL of non-infringement for unasserted claims not actually litigated at trial).  Samsung's waiver of its counterclaims of non-infringement for the Unasserted Claims is further highlighted by its failure to include these claims in its proposed verdict form.  Dkt. No. 274-1.  Once Rembrandt announced that it would no longer pursue the Unasserted Claims (TT 2/9/2015 PM at 44:7-10) and there were no live counter-claims of noninfringement as to these claims, it was no longer possible to grant Samsung

---

[17] The Parties were limited at trial to ten hours of evidence per side.  Dkt. No. 226 (Minute Entry From Pretrial Conference) at 1.  This effectively precluded Rembrandt from pursuing the Unasserted Claims during the trial.

JMOL on those claims under Federal Circuit precedent.  *Alcon Research Ltd. v. Barr Labs., Inc.*, 745 F.3d 1180, 1193 (Fed. Cir. 2014) ("[W]e recently decided that a patentee's announcement that it was no longer pursuing particular claims, coupled with its ceasing to litigate them, was sufficient to remove those claims from the case even without such formalities").

*Second*, Samsung is not entitled to JMOL as to a subset of the Unasserted Claims— namely, '580 claims 1 and 58 and '228 claim 1—because there was substantial evidence of infringement as to those claims.  In this case, the Jury found infringement of three dependent claims, claims 2 and 59 of the '580 Patent and claim 21 of the '228 Patent, which depend from claims 1 and 58 of the '580 Patent and claim 1 of the '228 Patent, respectively.  Dkt. No. 288 (Verdict).  Therefore, the Jury necessarily found infringement of '580 claims 1 and 58 and '228 claim, and JMOL is improper.  *Wahpeton Canvas Co. v. Frontier, Inc.*, 870 F.2d 1546, 1553 (Fed. Cir. 1989) ("It is axiomatic that dependent claims cannot be found infringed unless the claims from which they depend have been found to have been infringed").

*Finally*, Samsung's motion is untimely. Rule 50(b) states that, if a renewed motion for JMOL "addresses a jury issue not decided by a verdict," it must be submitted "no later than 28 days after the jury was discharged."  FED. R. CIV. P. 50(b).  Here, Samsung seeks to attain a judgment of non-infringement of the Unasserted Claims, which is a factual question for the jury (*i.e.*, "a jury issue"), even though this issue was never presented to the Jury for a verdict (*i.e.*, the issue was "not decided by a verdict").  *See* Dkt. No. 288 (Verdict) (not addressing the Unasserted Claims).  Consequently, pursuant to Rule 50(b), Samsung had 28 days from the day the Jury was discharged in February to file this motion.  This Motion—filed in August, far beyond the 28-day limit—is therefore untimely. Samsung's motion should be denied for this alternative reason.

V.    **CONCLUSION**

For the reasons set forth herein, Samsung's motion for JMOL or a new trial on liability issues should be denied in its entirety.

**DATED**: September 7, 2015          Respectfully submitted,

> By:    */s/ Eric J. Enger*
> Michael F. Heim (Texas Bar No. 09380923)
> mheim@hpcllp.com
> Eric J. Enger (Texas Bar No. 24045833)
> eenger@hpcllp.com
> Miranda Y. Jones (Texas Bar No. 24065519)
> mjones@hpcllp.com
> Blaine A. Larson (Texas Bar No. 24083360)
> blarson@hpcllp.com
> **HEIM, PAYNE & CHORUSH, L.L.P.**
> 600 Travis Street, Suite 6710
> Houston, Texas 77002
> Telephone: (713) 221-2000
> Facsimile: (713) 221-2021
>
> Demetrios Anaipakos (Texas Bar No. 00793258)
> danaipakos@azalaw.com
> Amir Alavi (Texas Bar No. 00793239)
> aalavi@azalaw.com
> Jamie Aycock (Texas Bar No. 24050241)
> Email: jamieaycock@azalaw.com
> Alisa Lipski (Texas Bar No. 24041345)
> Email: alipski@azalaw.com
> Kyril Talanov (Texas Bar No. 24075139)
> Email: ktalanov@azalaw.com
> **AHMAD, ZAVITSANOS, ANAIPAKOS,**
> **ALAVI & MENSING, P.C.**
> 1221 McKinney Street, Suite 3460
> Houston, TX 77010
> Telephone: 713- 655-1101
> Facsimile: 713-655-0062
>
> T. John Ward, Jr., State Bar No. 00794818
> jw@wsfirm.com
> **WARD & SMITH LAW FIRM**
> 1127 Judson Rd, Ste. 220

31

Longview, Texas 75601
Telephone (903) 757-6400
Facsimile (903) 757-2323

**Attorneys for REMBRANDT WIRELESS
TECHNOLOGIES, LP**

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that the following was served to all counsel of record via CM/ECF on

September 7, 2015.

*/s/ Eric J. Enger*